# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ELENA MYERS COURT,** § | |
| § | |
| *Plaintiff*, § | |
| § | |
| **v.** § | |
| § | **CIVIL ACTION NO. _____** |
| **LOEWS PHILADELPHIA HOTEL,** § | |
| **INC., TWELFTH STREET HOTEL** § | |
| **ASSOCIATES, L.P., LPH PARTNER,** § | |
| **INC., LOEWS HOTELS HOLDING** § | |
| **CORPORATION, PHILADELPHIA** § | |
| **HOTEL OPERATING COMPANY,** § | |
| **INC., LLB GYM, LLC d/b/a 12ᵀᴴ** § | |
| **STREET GYM and/or 12FIT GYM and** § | |
| **SPA; FRANK BAER; 12FIT LLC; and** § | |
| **JEROME MCNEILL,** § | |
| | |
| *Defendants*. | |

## COMPLAINT

Plaintiff Elena Myers Court, by her undersigned counsel, files her Amended Complaint against Defendants Loews Philadelphia Hotel; Inc.; Twelfth Street Hotel Associates, L.P.; LPH Partner, Inc.; Loews Hotel Holding Corporation; Philadelphia Hotel Operating Company, Inc. (collectively "Loews Entities"); LLB Gym, LLC, d/b/a 12th Street Gym and/or 12Fit Spa and Gym (collectively "LLB Gym"); 12Fit LLC ("12Fit"); Frank Baer; and Jerome McNeill, and in support thereof avers as follows:

### PARTIES

1.    Plaintiff Elena Myers Court ("Mrs. Court") is a citizen and resident of the State of California.

2.    Defendant Loews Philadelphia Hotel, Inc. is a Delaware corporation d/b/a Loews Philadelphia Hotel ("Loews Hotel") duly organized, registered to transact business in the

Commonwealth of Pennsylvania under the fictitious name Loews Philadelphia Hotel, and with a principal place of business at 1200 Market Street, Philadelphia, Pennsylvania 19107. Loews Hotel may be served with process through its registered agent, Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808, or wherever it may be found.

3.      Defendant Twelfth Street Hotel Associates, L.P. ("12th Street") is a limited partnership organized and existing under the laws of the Commonwealth of Pennsylvania with agents authorized to receive service of process and a principal place of business at c/o Loews Hotels, Inc., 667 Madison Avenue, New York, New York 10065.

4.      Defendant LPH Partner, Inc. ("LPH") is a Delaware corporation duly organized, registered to transact business in the Commonwealth of Pennsylvania, and with a place of business at 1200 Market Street, Philadelphia Pennsylvania 19107. At all times material, LPH was the general partner of 12th Street. LPH may be served with process through its registered agent, Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808, or wherever it may be found.

5.      Defendant Loews Hotel Holding Corporation is a Delaware corporation ("Loews Holding") duly organized and registered to transact business in the Commonwealth of Pennsylvania through its wholly owned subsidiary Loews, and with a principal place of business at 1200 Market Street, Philadelphia, Pennsylvania 19107. Loews Holding may be served with process through its registered agent, United States Corporation Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808, or wherever it may be found.

6.      Defendant Philadelphia Hotel Operating Company, Inc. is a Delaware corporation ("Operating Company") duly organized and registered to transact business in the Commonwealth of Pennsylvania. Upon information and belief, the principal place of business of the Operating

Company is 655 Madison Avenue, New York, New York 10065-8043. The Operating Company may be served with process through its registered agent, Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808, or wherever it may be found.

7.    Defendant LLB Gym, LLC, d/b/a 12th Street Gym and/or 12Fit Spa and Gym ("LLB Gym"), is a limited liability company organized and existing under the laws of the Commonwealth of Pennsylvania with a principal place of business and registered office address at 204 S. 12th Street, Philadelphia, Pennsylvania 19107. LLB Gym may be served with process at its registered office address at 204 S. 12th Street, Philadelphia, Pennsylvania 19107, or wherever it may be found.

8.    Defendant 12Fit LLC ("12Fit") is a limited liability company organized and existing under the laws of the Commonwealth of Pennsylvania, with a principal place of business at 204 South 12th Street, Philadelphia, Pennsylvania 19107. 12Fit may be served with process at its registered office address at 204 S. 12th Street, Philadelphia, Pennsylvania 19107, or wherever it may be found.

9.    Defendant Frank Baer ("Mr. Baer") is a citizen and resident of the Commonwealth of Pennsylvania. Mr. Baer may be served with process at his home address at 4350 Horseshoe Pike, Honeybrook, Pennsylvania 19344, or wherever he may be found.

10.    Defendant Jerome McNeill ("Mr. McNeill") is a citizen and resident of the Commonwealth of Pennsylvania. McNeill may be served with process at his home address at 2067 East Venango Street, Philadelphia, Pennsylvania 19134, or wherever he may be found.

11.    At all times material hereto, Mr. McNeill was employed by LLB Gym and 12Fit as a massage therapist to perform services upon customers and guests at the Loews Philadelphia Hotel.

## JURISDICTION AND VENUE

12.     Jurisdiction exists by virtue of diversity of citizenship.  28 U.S.C. § 1332.  The amount in controversy exceeds seventy-five thousand dollars ($75,000.00), exclusive of interest and costs.

13.     Venue is proper in this judicial district because it is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.  28 U.S.C. §§ 1391(a) and 1391(b)(2).

## NATURE OF THE CASE

14.     This suit arises out of Mr. McNeill's grievous sexual assault of Mrs. Court on September 15, 2014, while she was a guest of the Loews Hotel at 1200 Market Street in Philadelphia, Pennsylvania.  At the time of the assault, Mr. McNeill was employed as a massage therapist by LLB Gym, the Loews Entities and 12Fit, despite having a criminal history, including a charge for indecent assault just three months earlier, and a history of inappropriately exposing and groping at least one patron (and eventually others) during massages at the 12Fit Spa and Gym facility and at least one other spa in the Philadelphia area.

15.     Mrs. Court alleges that the Loews Entities, LLB Gym and 12Fit acted in reckless indifference to the safety and well-being of Mrs. Court and other patrons by employing Mr. McNeill as a massage therapist, necessitating his physical interaction with nude or nearly-nude hotel patrons; by failing to supervise Mr. McNeill and the 12Fit Spa and Gym facilities, and prevent Mr. McNeill's interaction with guests; by failing to have adequate safeguards, policies, and procedures in place to prevent harm to their guests and address crimes committed against their guests; by failing to exercise reasonable care for the safety of their guests and Mrs. Court; by failing to warn their guests and Mrs. Court about Mr. McNeill's dangerous propensities or to

otherwise take action to safeguard guests and Mrs. Court from Mr. McNeill; and by re-victimizing, belittling, and embarrassing Mrs. Court and her mother when they sought their assistance and tried to report Mr. McNeill's sexual assault.

16.    As a result of the Defendants' tortious conduct, including, but not limited to, Mr. McNeill's sexual assault of Mrs. Court, and the prior and subsequent egregious and callous handling of complaints regarding Mr. McNeill's criminal activity and the response by the Loews Entities, LLB Gym and 12Fit, Mrs. Court sustained serious physical injuries and mental pain and suffering.

## BACKGROUND FACTS

### THE RELATIONSHIP BETWEEN THE DEFENDANTS

17.    At all times material hereto, the Loews Entities owned, operated, leased, possessed, maintained, or controlled the property known as the Loews Philadelphia Hotel at 1200 Market Street in Philadelphia, Pennsylvania.

18.    Among the amenities offered to hotel guests and the public at the Loews Philadelphia Hotel is a fitness center, including a gym and spa, located on the fifth floor of the hotel.

19.    The fitness center at the Loews Hotel has a well-earned reputation for being associated with illegal sexual activity.

20.    In 2009, the "Loews Hotel Health Club 12th and Market St., Philadelphia, PA" was listed as one of the "Top 10 Public Cruising Spots in America" by Cruising for Sex, an Internet publication that apparently caters to individuals searching for such illegal activity.

21.    In addition, the Loews Philadelphia Hotel currently holds a 4-Star Rating (out of five possible stars) in the "City Hookup Guide" published by Cruising Gays.

22.    Other web sites promoting illegal sex, such as Squirt.org (which awarded the Loews Philadelphia Hotel its highest rating), encourage users to visit to the fitness center, "Get naked, have a shower, then head to the sauna – steam room and have some fun."

23.    The Loews Entities either knew or reasonably should have known that the spa and fitness center of the Loews Philadelphia Hotel had a local and national reputation for inviting and harboring illegal activity of a sexual nature, including, among other things, indecent exposure, open lewdness, public sex and solicitation.

24.    Based on its long-standing reputation for inviting and harboring activity of a sexual nature, the Loews Entities either knew or reasonably should have known that the fitness center of the Loews Philadelphia Hotel would invite further criminal activity of a sexual nature and, indeed, that the fitness center of the Loews Philadelphia Hotel would attract individuals that would be seeking opportunities to engage in criminal activity of a sexual nature.

25.    Defendant Frank Baer is an adult individual residing and working in the Commonwealth of Pennsylvania.  Mr. Baer is the President and/or General Manager of Defendant LLB Gym, a 37.5% shareholder of Defendant LLB Gym, and the President of Defendant 12Fit.

26.    Mr. Baer personally participated in the tortious conduct complained of herein by, among other things: (a) hiring Jerome McNeill; (b) failing to investigate Mr. McNeill's criminal, employment and reference sources at the time he was hired or in the months before he came into contact with Plaintiff; (c) failing to supervise the employees and contractors working at the 12Fit Spa & Gym at the Loews Philadelphia Hotel, and set policies and procedures to prevent illegal sexual contact with patrons and guests; (d) failing to recognize and address the 12Fit Spa & Gym's reputation as a place to engage in illegal sexual activity, thereby attracting sexual predators; (e) acting with callous indifference to Mrs. Court's report of her sexual assault by Mr. McNeill, by

shaming Mrs. Court and being dismissive of her report in his interactions and communications with Mrs. Court, A.M., and employees of the Defendants; and (f) failing to immediately report Mr. McNeill's indecent assault of Mrs. Court to the Philadelphia Police.

27.    At all times material hereto, LLB Gym and 12Fit, the owners and operators of the 12Fit Spa at the Loews Philadelphia Hotel, have owned, operated, leased, possessed, maintained, or controlled a property located at 204 South 12th Street, Philadelphia, Pennsylvania 19107 known as "12th Street Gym."

28.    The owners and operators of the 12th Street Gym, including Mr. Baer, are no strangers to the issue of sex taking place in their facility.  In a May 12, 2015 interview with *G Philly* magazine, Eric Michael Sales, publicist for the 12th Street Gym, admitted that sexual activity had occurred in that facility but stated:  "We're definitely not seedy.  We've evolved over the years.  There *was* an issue in the past, but changes have been made to both our appearance and our practices."

29.    Accordingly, defendants LLB Gym and 12Fit were on notice that illegal activity of a sexual nature could and did occur in their fitness centers; they knew or reasonably should have known that they had an obligation to safeguard against, and protect their patrons from, uninvited or illegal activity of a sexual nature in the fitness centers they managed and operated; and, without such safeguard and appropriate policies and procedures in place, fitness centers could attract employees seeking opportunities to engage in criminal activity of a sexual nature.

30.    Loews also understood this danger, particularly for out-of-town guests, unfamiliar with local reputations.  Accordingly, the Loews Entities were on notice that illegal activity of a sexual nature could and did occur in the spa and fitness center at the Loews Philadelphia Hotel; they knew or reasonably should have known that they had an obligation to safeguard against, and

protect their patrons from, uninvited or illegal activity of a sexual nature in the premises within their hotel; and, without such safeguard and appropriate policies and procedures in place, their fitness centers could attract invitees and employees seeking opportunities to engage in criminal activity of a sexual nature.

31.    On December 2, 2013, 12Fit entered into an "Agreement of Lease" with the Loews Entities (the "Lease").  The Lease outlined the relationship between the Loews Entities and 12Fit, described their joint enterprise, and memorialized their understanding that the spa and fitness center at the Loews Philadelphia Hotel should be operated in a manner that protected the safety and well-being of guests and patrons.

32.    Among other things, the Lease granted the Loews Entities control over 12Fit's business operations and personnel, including the right to direct 12Fit in the hiring and firing of its personnel.

33.    According to various provisions in the Lease:

a.    "Tenant [12Fit] agrees that Tenant shall operate the Fitness Center and Spa on a deluxe basis which shall be at least comparable to the manner of operating health clubs and/or exercise facilities and spas located in the highest quality convention hotels currently existing in the Philadelphia, Pennsylvania area."  (Lease ¶ 3.2.)

b.    "Tenant recognizes that the operation of the Hotel is an extremely valuable asset of Owner [Loews Entities], and that the method of operation and the service of goods furnished by the Tenant are and may be identified by the guests of the Hotel with the name of the Hotel.  As a special inducement to Owner to enter into this lease, Tenant covenants and agrees that, at all times during the Term, Tenant's use of the Premises, and the business conducted thereat, and the kind and quality of the services and products therefrom, and the

deportment of the personnel employed therein, shall conform to the standards and policies of the Hotel."  (Lease ¶ 3.3.)

      c.      "If, for any reason, Owner is not satisfied with the deportment of the personnel employed at the Premises, Tenant shall cause its executive officers to meet with representatives of Owner … for the purpose of discussing means of preventing a recurrence of improper deportment, if any, of Tenant's personnel.  Tenant shall replace or relocate any of Tenant's employees at the Hotel who, in the reasonable opinion of Owner, shall have failed to conform to the policies of the Hotel in the treatment of guests and others using the facilities of the Hotel."  (Lease ¶ 3.3.)

      d.      "Tenant shall provide all personnel necessary to assure the efficient and proper operation of the Fitness Center and Spa (the **"Employees"**) in accordance with the requirements of this Lease. All Employees shall be employees of Tenant only and shall be trained, hired, instructed and directed by Tenant.  If requested by Owner, the Employees shall, from time to time, attend Hotel staff meetings and training sessions to assure proper coordination of the Fitness Center and/or Spa with the needs of the Hotel.  The Employees shall review and adopt the guidelines set forth in the Hotel Employee Handbook." (Lease ¶ 5.1.)

      e.      "Tenant shall cause Employees to adhere to the Loews Hotel standards for operation of the Fitness Center and Spa.  As noted above, the manner in which the Fitness Center and Spa are operated, including the conduct of Employees, is of great significance to the Owner.  Accordingly, Tenant shall not continue to employ at the Premises any person whose conduct has been improper, or with respect to whom the Owner objects, acting reasonably."  (Lease ¶ 5.2.)

f.    "Tenant shall be entitled to license to third parties the performance of certain Spa services, subject to the prior written consent of the Owner in each instance, such consent not to be unreasonably withheld, provided that such proposed third parties and their employees shall be professionals trained and licensed in all respects to the same standards as tenant and shall meet all of the requirements of 'Spa Employees' as described in this Article 5."  (Lease ¶ 5.5.)

g.    The Tenant was required to acquire and maintain "Professional Liability Insurance covering Tenant's business operations with limits of not less than $5 million per occurrence.  Such insurance shall include a sexual harassment/sexual abuse coverage endorsement and shall provide coverage for independent contractors engaged by Tenant." (Lease ¶ 10.2(f).)

34.    At all relevant times herein, Mr. Baer, the Loews Entities, LLB Gym and 12Fit were engaged in a joint enterprise.  The Loews Entities, LLB Gym and 12Fit Spa agreed to a mutual undertaking with a common purpose of pecuniary interest wherein the Loews Entities were able to offer access to 12Fit Gym & Spa as an amenity to attract guests, and LLB Gym and 12Fit were able to expand its client base to include Loews Hotel guests.  Mr. Baer personally benefitted from this joint enterprise as the majority shareholder of Defendants LLB Gym and 12Fit.

35.    Upon information and belief, 12Fit leased the gym and spa premises at the Loews Philadelphia Hotel; Mr. Baer and LLB Gym hired, paid and supervised the management, employees and independent contractors operating the 12Fit Gym and Spa; and the Loews Entities exercised dominion, custody, supervision and control over the operations of the gym and spa premises at the Loews Philadelphia Hotel.

36.    The Defendants were associated together and integrated their resources to achieve a joint enterprise, and each Defendant had an equal voice in the direction of the enterprise. Accordingly, each is responsible and liable for the actions and omissions of the other while acting or omitting to act in furtherance of their common undertaking.

## THE HIRING OF JEROME MCNEILL

37.    According to the sworn deposition testimony of Frank Baer, President of LLB Gym and co-owner of the 12th Street Gym and 12Fit, in *Thorne v. Loews Philadelphia Hotel, Inc.*, U.S.D.C., E.D. Pa., Civ. No. 2:15-cv-03837-GP (the "*Thorne* case"), 12Fit first became aware of Mr. McNeill in mid-July 2014, after another one of its massage therapists, Lorraine Mayberry, indicated that she worked with Mr. McNeill at the Hand & Stone Massage and Facial Spa in Haverford, Pennsylvania ("Hand & Stone Spa"), and Ms. Mayberry suggested that 12Fit hire Mr. McNeill to fulfill a guest's request for a "couples massage."

38.    On or about July 17, 2014, defendant Jerome McNeill applied for employment as a massage therapist at the 12Fit.

39.    Although the job application completed by McNeill was a form used by 12th Street Gym, it was used to secure Mr. McNeill's employment at the facility operated by the 12Fit, within the hotel owned and operated by the Loews Entities.

40.    Mr. McNeill listed no employment history and provided no personal or employment references on his job application, especially, his immediate prior employer, Hand & Stone Spa.  Instead, he provided a short resume listing his prior work experience through only July 2013, more than one year prior to submitting his job application to 12Fit.

41.     In response to the question, "Have you ever been convicted of a crime? (Do not answer this question until after you have been interviewed.)," Mr. McNeill answered:  "Yes[.] Fleeing and [sic] officer on a motorcycle."

42.     According to the sworn deposition testimony of Mr. McNeill in the *Thorne* case, Mr. McNeill was interviewed by Mr. Baer when he applied for a job at the 12th Street Gym, and Mr. Baer reviewed his completed job application with him.

43.     Mr. McNeill's employment application raised at least two red flags that would have put a reasonable person or prospective employer on notice that further investigation was required: an acknowledgement of prior criminal history and a one-year gap in employment (during which time Mr. McNeill was incarcerated and on house arrest).  Despite this, Mr. Baer never made any further inquiries of Mr. McNeill, or anybody else concerning Mr. McNeill, and he overlooked Mr. McNeill's disclosure of a prior criminal history when hiring him to work as a massage therapist for the Defendants.

44.     As part of his job application, Mr. McNeill gave permission for Defendants to conduct checks of his credit, criminal, employment and reference sources, and to obtain consumer reports detailing elements of his credit, criminal or employment histories.

45.     Despite receiving Mr. McNeil's permission to do so, neither Mr. Baer, LLB Gym, 12Fit nor the Loews Entities ever performed checks of Mr. McNeill's credit, criminal, employment and reference sources at the time he was hired or in the months before he came into contact with Plaintiff Elena Myers Court.

46.     Had Mr. Baer, LLB Gym, 12Fit and/or the Loews Entities performed a criminal background check on Mr. McNeill, they would have discovered that he had an extensive criminal record, including at least three different arrests for fleeing or evading the police (not one, as Mr.

McNeill disclosed to Mr. Baer, but which Mr. Baer failed to investigate), and he was arrested in 2007 and charged with kidnapping and repeatedly raping a 12-year-old girl.

47.    According to the affidavit of probable cause in the 2007 arrest, which LLB Gym, 12Fit and/or the Loews Entities could have easily obtained through publicly available sources, Mr. McNeill was alleged to have penetrated the girl's vagina with his penis on three occasions, after she told him not to.

### THE HAND & STONE INCIDENT

48.    Within a few days of his hiring by LLB Gym, Mr. McNeill informed its owner, Frank Baer that he had previously worked as a massage therapist at the Hand & Stone Spa.  Despite receiving this information, Mr. Baer never contacted the Hand & Stone Spa to check on Mr. McNeill's personal and employment references.

49.    Had LLB Gym, 12Fit and/or the Loews Entities called the Hand & Stone Spa to check on Mr. McNeill's personal and employment references, they would have learned that Mr. McNeill had been fired by the Hand & Stone Spa after he allegedly grabbed a male customer's penis during a massage on July 15, 2014.

50.    On or about July 29, 2014, Mr. McNeill was charged with Indecent Assault, in violation of 18 Pa. C.S. § 3126(a)(1).

51.    Mr. McNeill was arrested and posted bail on the following day, July 30, 2014.

52.    At no time prior to employing Mr. McNeill as a massage therapist and/or allowing him physical access to nude or nearly-nude hotel guests and spa patrons in private settings did LLB Gym, 12Fit and/or the Loews Entities perform checks of Mr. McNeill's credit, criminal, employment histories and/or reference sources.

53.     At no time in the weeks after employing Mr. McNeill as a massage therapist and/or allowing him physical access to nude or nearly-nude hotel guests and spa patrons in private settings did Mr. Baer, LLB Gym, 12Fit and/or the Loews Entities perform checks of Mr. McNeill's credit, criminal, employment histories and/or reference sources, despite having actual and constructive notice that such further investigation was warranted.

## THE FIRST KNOWN MCNEILL INCIDENT AT LOEWS

54.     On September 15, 2014, Mr. McNeill performed a "sports massage" on Mrs. Court, then a 20-year-old female hotel guest and spa patron.

55.     Mrs. Court had been induced to stay at the Loews Philadelphia Hotel and reserve her massage at the 12Fit Spa & Gym by positive reviews on mainstream web sites, but she was unaware of the hotel and spa's reputation for illicit sexual encounters on web sites catering to individuals searching for those activities.

56.     Upon arriving at the spa, Mrs. Court checked in and filled out the usual paperwork. She was notified that her masseuse was a male, which she had no problem with because, as a professional athlete, she had been massaged by several men in the past with no problems at all. After this, she was shown to the women's locker room where she was given a robe and shown where she could relax and wait for her masseuse.

57.     Shortly thereafter, she was greeted by a tall, fit man (6"1" and 200 pounds) -- Mr. McNeill – who instantly gave the 5'4" Mrs. Court an intimidated feeling, but she shrugged it off given that she was in a nice hotel and spa, supposedly with professional staff and high standards.

58.     After getting to the private massage room, Mr. McNeill went through the normal procedure of asking Mrs. Court if she had any problem areas, and then he asked her to undress and lay face down, telling her that he would return in a minute.  Mrs. Court complied with these

instructions, undressing to just her panties and laying down on the table, covering herself with the sheets and blanket.

59.    After returning, Mr. McNeill started working on Mrs. Court's back first, which was typical practice, and all seemed fine until he switched to her legs.  Mr. McNeill pulled the sheet up Mrs. Court's leg much higher than anyone had before, exposing her private areas, and then he proceeded to massage up her leg until the top part of his hand was repeatedly touching her panties and genitals underneath.  Mr. McNeill continued to rub this part of her body, which put Mrs. Court into complete shock.  She felt violated, intimidated and absolutely terrified; feeling as though she was watching herself from up above.  Mr. McNeill continued to massage her buttocks in a groping manner, and then he proceeded to do the same to her other leg while she lay there in shock.

60.    Next, Mr. McNeill instructed Mrs. Court to flip over so he was laying on her back with her head facing up.  He continued to do the same massaging of the front and sides of her upper legs, again repeatedly touching the top part of his hands to her underwear and genitals.

61.    Mr. McNeill, who is significantly larger and stronger than Mrs. Court, engaged in repeated, improper, and nonconsensual sexual contact with Mrs. Court while she was in a vulnerable position, almost completely undressed and unable to resist.   Throughout this experience, Mrs. Court was in shock, horrified, and too afraid to speak.  She never gave Mr. McNeill consent to fondle, grope and/or touch her in the manner and places in which he did.

62.    Mr. McNeill's repeated massaging and indecent contact with Mrs. Court's panties and private areas, while she was almost fully undressed and in a vulnerable position, and without her consent, constitutes tortious behavior and the crime of "Indecent Assault" in violation of 18 Pa. C.S. § 3126.

63.     After the massage, Mrs. Court immediately reported Mr. McNeill's assault to Felipe Carrillo, the spa manager, that she had been violated by Mr. McNeill.  However, Mr. Carillo acted indifferent and callous, shrugging off Mrs. Court's reports and saying he would leave a note for the spa manager.

64.     Indeed, Mr. Carillo did not call the police or hotel security.  Instead, Mr. Carillo called Mr. Baer and recounted that Mrs. Court merely stated that she was "uncomfortable" during the massage and she "hinted to being personally violated" by Mr. McNeill.

65.     Thereafter, Mrs. Court spoke to Mr. Baer and reported to him that she had previously "had several hundred massages and never felt so uncomfortable," and Mr. McNeil had touched her "lower body" "in a way she didn't feel comfortable with."

66.     Like Mr. Carillo, Mr. Baer shrugged off Mrs. Court's complaints.  He acted abrasively and dismissively, discounting and minimizing her complaints as if she was overreacting or fabricating her account of the assault, and facetiously apologizing to Mrs. Court because "she did not like her service."

67.     Mr. Baer never encouraged Mrs. Court to immediately alert the Loews Entities or call the Philadelphia Police, nor did he do so himself.  Having no policies and procedures in place to adequately deal with Mr. McNeill's foreseeable conduct, and not having the sense or will to support Mrs. Court and direct her to authorities and professionals that could help her, Mr. Baer failed to assist Mrs. Court and he breached the duty of care owed to business invitee in a professional spa environment.  Instead, Mr. Baer left a 20-year-old victim from California with little recourse in a strange place and an unfamiliar city.  He was judgmental, dismissive and harsh, minimizing the gravity of the traumatic event and compounding the shame and emotional harm that Mrs. Court suffered and would continue to suffer.

68.    Mr. Baer discussed Mrs. Court's complaint with Mr. McNeill that night but Mr. McNeill denied her allegations.

69.    Shortly after his conversation with Mr. McNeill, Mr. Baer received a phone call from Mrs. Court's mother, identified herein for privacy purposes by the initials "A.M.," who provided a detailed report.   Among other things, A.M. reported that her daughter "was uncomfortable and felt like she was grouped [sic] and personally violated[,]" that Mr. McNeill was "rubbing his hands up and down her leg from foot up to her butt and crack and crotch," and "she said she didn't know if she was going to file a report or file charges."

70.    Despite receiving more detailed information indicating that a crime had been committed, Mr. Baer again failed to take the report of sexual assault seriously, he was not supportive or helpful, and he failed to immediately alert the Loews Entities or call the Philadelphia Police.

71.    The following morning, on September 16, 2014, A.M. called Sean Clancy, the Managing Director of the Loews Philadelphia Hotel, to report her daughter's incident with Mr. McNeil at 12Fit the prior evening.  A.M. did not reach Mr. Clancy at that time, so she left a message for him to call her.

72.    Prior to speaking with A.M., Mr. Clancy sought details of the incident from Mr. Baer, who responded first with an email stating that Mr. McNeill was merely an "independent contractor" and providing details of Mr. McNeill's Philadelphia commercial activity license, Pennsylvania massage therapist license and professional massage therapist insurance; and later with a second email providing Mr. Baer's notes from his conversations the night before with Mrs. Court, A.M. and Mr. McNeill.

73. Like Mr. Baer, Mr. Clancy minimized the gravity of the traumatic event and he was more concerned with minimizing the Loews Entities' responsibility for the conduct of Mr. McNeill and persuading Mrs. Court and her mother to leave town without filing a police report or seeking help from the authorities.

74. Mr. Clancy's email communications with Mr. Baer throughout the day on September 16, 2014 evidence the Defendants' strategy of denial and avoidance of responsibility.

75. At 2:21 p.m., Mr. Clancy replied to Mr. Baer via email, stating: "OK, we are buying them lunch in Bank & Bourbon (coordinated through our Security Department) which hopefully they'll appreciate."

76. At 2:38 p.m., almost 24 hours after the assault had taken place, Mr. Baer finally gave a detailed report of the incident to Mr. Clancy, stating Mrs. Court had advised she "felt like she was grouped [sic] and personally violated[,]" that Mr. McNeill was "rubbing his hands up and down her leg from foot up to her butt and crack and crotch," and "she said she didn't know if she was going to file a report or file charges."

77. Rather than call the police or advise Mrs. Court or her mother to do so, in conversations with A.M. Mr. Clancy instead sought to minimize the severity of the assault, deflect responsibility for Mr. McNeill's conduct away from the Defendants and solely on to Mr. McNeill, and persuade Mrs. Court and her mother to leave town without filing a police report or seeking help from the authorities.

78. Later on, after speaking to A.M. for a third time, Mr. Clancy reported to Mr. Baer that his efforts had been successful: the Loews Entities were comping Mrs. Court and A.M. the cost of one night's stay in the hotel and tax and "We'll consider the matter closed."

79.    At 5:45 p.m., Mr. Baer responded by apologizing to Mr. Clancy for the cost of the incident, saying "we owe you…," then asked:  "So you assume this is the 'end'?"  Mr. Clancy replied:

> Yes, at least the end of my patience. ☺
> No worries on the follow-up and the $$$.  We'll just have to make sure that our policies are clear with the therapists as discussed yesterday.

80.    Despite learning that Mr. McNeill had reportedly groped and violated a 20-year-old female guest, Mr. Baer, LLB Gym, 12Fit and the Loews Entities did nothing to report this incident to the police, remove Mr. McNeill from further access to hotel guests and spa patrons, warn hotel guests and spa patrons, strengthen their policies to prevent further incidents from occurring, investigate Mr. McNeill's background or work history, or otherwise ensure the safety of hotel guests and spa patrons.

81.    Furthermore, Mrs. Court was re-victimized by the Defendants' indifferent and callous handling and response to her assault complaint, including Mr. Baer's callous indifference to Mrs. Court and A.M.'s report of her assault, Mr. Clancy's dismissive handling of the assault report, and the Defendants' abject failure to have adequate staffing, policies, and procedures in place when a guest is sexually assaulted in its spa and hotel.  As a result, Mrs. Court has sustained severe and permanent mental anguish, including, but not limited to prolonged anxiety and distress; persistent negative trauma-related emotions, including fear, horror, anger, guilt, shame, constriction, obsessive behavior and sleeplessness.

## THE SECOND MCNEILL INCIDENT AT LOEWS

82.    On the same day that Mr. Clancy was communicating with A.M., buying the victim and her mother lunch and comping their room, Mr. Baer received a report of Mr. McNeill inappropriately touching another unclothed female spa patron.

83.    On the night of September 16, 2014, Mr. Baer received a report from a personal friend, identified herein for privacy purposes by the initials "K.F.," that she had recently received a massage from Mr. McNeill at the 12Fit and he had touched her "in an inappropriate way."

84.    According to an email K.F. sent to Mr. Baer that evening:

> The first half of the massage was great, I was able to get into a calm state and zen out a bit.  About halfway into the massage I started to feel differently though; I began feeling like I needed to be actively aware of the location of his hands and how much of my body was exposed. Normally when I get a massage there's a way that the therapist wraps the sheet around me so that nothing is revealed in spite of my nakedness but Jerome didn't do a very good job of that.  I found myself wondering if he was, to be frank, able to see between my legs.  Furthermore, when he was rubbing my thighs he touched way beyond an area that I would consider typical of a massage therapist and, in my opinion, in an inappropriate way.

> I'm also used to a massage therapist checking in one or two times to be certain that I'm doing OK but Jerome checked-in with me during the second half of the massage somewhere between 6 and 8 times which struck me as strange.  This is totally my perception and may be inaccurate but I had the sense that if I responded a certain way that he would have taken it as a go-ahead to make a "happy ending" happen.

> At one point I decided that if he moved literally 2 centimeters closer I would stop the massage.  Lastly, after the massage was over I was taking a moment to regroup and he knocked once and then came in without my saying it was OK to open the door and I had to quickly cover up.  He explained that normally guests want to leave right away and so he thought I'd be doing the same.

85.    In an email to K.F. the following morning, Mr. Baer responded:

> Thanks so much for the feedback, and appreciate all the details...
> I am sorry your massage seemed to go away from a relaxing experience the second half....and I agree with you, that you should not need to lay there concerned of where hands will go....I value your opinion and you being honest with me...If you were in my shoes, since Jerome is not an employee, but an independent contractor, I am inclined based on what you have relayed to no longer schedule him anymore appointments at our facility….I would not want someone else to encounter this, and perhaps find it even more uncomfortable that you…..your thoughts?

86.     In an email to Mr. Baer dated September 23, 2014, K.F. replied: "[Y]es, I would agree in saying it's probably best not to use Jerome anymore."

87.     Mr. Baer subsequently advised Mr. Clancy and the Loews Entities of the second report he received that Mr. McNeill had inappropriately touched female patrons without their consent while he was employed as a massage therapist at the 12Fit.

88.     Despite receiving these reports, Mr. Baer never them took seriously.  He never disciplined Mr. McNeill, barred his access to customers or guests, or took any other corrective action on behalf of LLB Gym or 12Fit.

89.     Indeed, despite receiving two reports that Mr. McNeill had groped, violated inappropriately touched two unclothed female patrons on their premises within a matter of days, LLB Gym, 12Fit and the Loews Entities did nothing to report either incident to the police, to strengthen their policies to prevent further incidents from occurring, to investigate Mr. McNeill's background or work history, to remove Mr. McNeill from further access to hotel guests and spa patrons, to warn hotel guests and spa patrons, or to otherwise ensure the safety of hotel guests and spa patrons.

**THE THIRD MCNEILL INCIDENT AT LOEWS**

90.     Despite Mr. Baer's assurances to K.F. that 12Fit would no longer schedule appointments with Mr. McNeill and patrons at 12Fit facility, Mr. McNeill performed at least 40 massages there within the next 30 days.

91.     On October 14, 2014, Mr. McNeill appeared at a hearing in the Court of Common Pleas of Montgomery County, Pennsylvania in the criminal case docketed as *Commonwealth of Pennsylvania v. Jerome McNeill*, Docket No. CP-46-CR-0007632-2014, and was held over for

trial in the indecent assault case stemming from the incident at the Hand & Stone Spa on July 15, 2014.

92.    Also on October 14, 2014, Catherine Thorne checked-in as a guest at the Loews Hotel to attend an annual growth meeting and to be recognized with an award for outstanding performance by her employer.

93.    Upon arriving to her guestroom, Ms. Thorne noticed an advertisement for spa treatments offered at 12Fit, located within the Loews Philadelphia Hotel.  The advertisement, which was presumably placed in guest rooms to entice guests to avail themselves of services offered by the hotel, promised, *inter alia*, that the massages offered would "[g]ently immerse your senses in a private sanctuary of calm and total tranquility."

94.    Relying on the representations contained within the advertisement for spa treatments offered by Loews Philadelphia Hotel at the 12Fit Spa, Ms. Thorne and a co-worker booked a massage for October 16, 2014, before they were scheduled to attend a banquet dinner in the hotel.

95.    Upon arriving to the 12Fit Spa, Ms. Thorne completed the requisite forms, indicating that she wanted to be massaged on her left lower back, and she waited for her massage to begin.

96.    A short while later, after completing a massage on Ms. Thorne's co-worker, Mr. McNeill emerged from the massage room and introduced himself to Ms. Thorne.  Ms. Thorne entered the massage room, disrobed in private, laid face-down on the massage table, and covered her nude body with a bed sheet.

97.    During Ms. Thorne's massage, Mr. McNeill intentionally uncovered the majority of Ms. Thorne's body, unnecessarily leaving her naked body exposed.  Next, Mr. McNeill applied

copious amounts of lotion to Ms. Thorne's body, held her down, and intentionally sexually assaulted Ms. Thorne while she was face down on the massage table. Mr. McNeill engaged in repeated, improper, and nonconsensual sexual contact with Ms. Thorne by, among other things, digitally penetrating her vagina and anus on multiple occasions. When Ms. Thorne tried to resist, Mr. McNeill, who is significantly larger and stronger than Ms. Thorne, forced her legs up and held them down, and continued to sexually assault her. Mr. McNeill stopped his assault only after Ms. Thorne forcibly pushed herself away from the massage table and pleaded with Mr. McNeill to stop.

98.    Immediately after the assault, while Ms. Thorne was visibly shaken, Mr. McNeill continued his inappropriate contact by offering to help Ms. Thorne get dressed and attempting to place his hands around her neck.

99.    After leaving the area of the assault, Ms. Thorne sought the assistance of the Loews Hotel staff. Traumatized, Ms. Thorne went to the front desk, informed the front desk agent that she had been sexually assaulted in the hotel spa during her massage, and asked to speak with the highest ranking person on duty in a private location.

100.    Despite having a guest who was obviously in great distress, the front desk agent acted with callous disregard towards Ms. Thorne. Among other things, the front desk agent refused to move Ms. Thorne to a private location so she could describe what had happened to her outside the hearing of other guests, including Ms. Thorne's co-workers who were passing the front desk on their way to the company banquet. Instead, the front desk agent told Ms. Thorne that neither the general manager, assistant general manager, nor security director were available, and advised Ms. Thorne to return to the front desk after the banquet, where she was scheduled to be honored by her employer. In shock and not wanting to cause a scene, Ms. Thorne complied.

101.    Immediately after attending the banquet in a daze, Ms. Thorne returned to the front desk.  Despite the fact that three hours had passed since Ms. Thorne first reported her assault to the Loews Philadelphia Hotel staff, neither the general manager, assistant general manager, nor security director were made available.  The limited Loews Philadelphia Hotel staff available to assist Ms. Thorne continually asked her what they should do, despite Ms. Thorne making repeated demands for the staff to call the police.  Rather than concentrating on the physical, mental, and emotional well-being of a traumatized guest, just as they did with Mrs. Court, the Loews Philadelphia Hotel employees made a concerted effort to distance the hotel from Mr. McNeill by claiming he was not a Loews Hotel employee throughout their interactions with Ms. Thorne.

102.    The Defendants' callous treatment of K.F. and Ms. Thorne is nearly identical to their equally callous and recklessly indifferent treatment of Mrs. Court.  The Loews Entities, which tout their "strong reputation" for "delivering excellent customer service," induced Mrs. Court to stay at the Loews Philadelphia Hotel when she was searching for accommodations after a business trip to the Philadelphia area.  In spite of this, the Loews Entities demonstrated reckless indifference to the safety and well-being of its guests, including Mrs. Court, by facilitating, promoting, and profiting from the services of a massage therapist who had two documented accusations of indecent encounters from 12Fit Spa patrons and a lengthy criminal record, including a then-recent charge for indecent assault.

103.    Mr. Baer, the Loews Entities, LLB Gym and 12Fit had actual and constructive knowledge of Mr. McNeill's history of inappropriate behavior and criminal activity.  Despite this, LLB Gym, 12Fit and the Loews Entities negligently hired, supervised and retained Mr. McNeill as a masseur and permitted Mr. McNeill to have access to vulnerable patrons and guests, including Mrs. Court.

104.    In each of these three incidents, the Defendants followed a consistent pattern and practice of minimizing the victims' complaints, avoiding responsibility for the safety of their patrons and guests, deflecting blame onto Mr. McNeill and the victims and away from themselves, appeasing the victims in an effort to induce them not to report their assaults to the proper authorities, and continuously failing to ensure the safety of patrons and guests at the Loews Philadelphia Hotel and 12Fit Spa & Gym.

105.    In at least two of these incidents, including the assault on Mrs. Court, the Defendants' conduct caused the victims to suffer from sustained physical and emotional harm, including, but not limited to, physical injuries, pain and suffering, severe and debilitating mental distress, physical and mental trauma, shock, numbness, fear, anxiety, involuntary and intrusive memories, disassociation, loss of trust, fear of travel, sleeplessness, nightmares, flashbacks, terror, lack of initiative, diminished interest in pre-trauma activities, interference with personal relationships, diminished libido, persistent inability to experience positive emotions, constricted affect, guilt, shame, anger and depression.

## COUNT I
## ASSAULT & BATTERY

106.    The allegations of paragraphs 1 through 105 are incorporated herein by reference with the same force and effect as if set forth in full below.

107.    By intentionally touching, or applying force to, Mrs. Court's body—including her thighs, buttocks and genitalia—in a harmful and offensive manner without Plaintiff's consent, Mr. McNeill's conduct constitutes indecent assault and battery.

108.    Additionally, by intentionally attempting or threatening to inflict injury on Mrs. Court, which caused a reasonable apprehension of bodily harm and offensive contact in her, Mr. McNeill's conduct also constitutes assault.

109.    As a direct and proximate result of Mr. McNeill's assault and battery, Mrs. Court sustained physical and mental injuries, including pain and suffering and severe and debilitating mental anguish.

110.    Mr. McNeill's aforesaid actions were outrageous, intentional, reckless and/or malicious, entitling Mrs. Court to punitive damages.

### COUNT II
### NEGLIGENCE & NEGLIGENCE *PER SE*

111.    The allegations of paragraphs 1 through 110 are incorporated herein by reference with the same force and effect as if set forth in full below.

112.    On October 16, 2014, Mr. McNeill committed indecent assault by engaging in indecent contact with Mrs. Court for the purpose of arousing sexual desire in Mr. McNeill or Mrs. Court without Mrs. Court's consent, thereby violating 18 Pa. Cons. Stat. § 3126.

113.    The foregoing conduct constitutes negligence and negligence *per se*.

114.    As a direct and proximate result of Mr. McNeill's negligent conduct, Mrs. Court sustained physical and emotional harm, including, but not limited to, physical injuries, pain and suffering, severe and debilitating mental distress, physical and mental trauma, shock, numbness, fear, anxiety, involuntary and intrusive memories, disassociation, loss of trust, fear of travel, sleeplessness, nightmares, flashbacks, terror, lack of initiative, diminished interest in pre-trauma activities, interference with personal relationships, diminished libido, persistent inability to experience positive emotions, constricted affect, guilt, shame, anger and depression.

115.    The actions of Mr. McNeill as alleged herein were outrageous, intentional, malicious and/or conducted with reckless indifference to Mrs. Court's rights, thereby justifying an award of punitive damages to be imposed against Mr. McNeill.

## COUNT III
### NEGLIGENCE

116.    The allegations of paragraphs 1 through 115 are incorporated herein by reference with the same force and effect as if set forth in full below.

117.    Defendants Mr. Baer, LLB Gym and 12Fit, individually and through their agents and/or joint venturers, the Loews Entities, had a duty to exercise reasonable and ordinary care in the operation of the 12Fit Gym & Spa and in the hiring and supervision of its employees, agents, servants and independent contractors, all to the benefit of guests, patrons, business invitees, and persons like Mrs. Court.

118.    Defendant Loews Entities, individually and through its agents and/or joint venturers, Mr. Baer, LLB Gym and 12Fit, had a duty to exercise reasonable and ordinary care in the operation of the Loews Hotel and its amenities, in the selection and retention of its tenants to provide services to guests at the hotel, and in the hiring and supervision of its employees, agents, servants and independent contractors, all to the benefit of guests, patrons, business invitees, and persons like Mrs. Court.

119.    Defendants Mr. Baer, LLB Gym, 12Fit Spa and the Loews Entities were on notice that criminal activity of a sexual nature could and did occur in spas and fitness centers that were open to members of the public; they knew or reasonably should have known that they had an obligation to safeguard against, and protect their business invitees from, criminal activity of a sexual nature in the fitness centers they managed and operated; and, without such safeguard and appropriate policies and procedures in place, fitness centers could attract further criminal activity of a sexual nature and individuals seeking opportunities to engage in criminal activity of a sexual nature.

120.    Defendants Mr. Baer, LLB Gym, 12Fit and the Loews Entities had a duty to take reasonable precautions to protect their guests, patrons and business invitees from criminal acts that might be reasonably anticipated at the fitness center and spa in the Loews Philadelphia Hotel, including criminal activity of a sexual nature and crimes committed by individuals seeking opportunities to engage in criminal activity of a sexual nature.

121.    Defendants Mr. Baer, LLB Gym, 12Fit and the Loews Entities had a duty to supervise and exercise reasonable care to control their employees and independent contractors to prevent them from intentionally harming others or from conducting themselves in a way that could create an unreasonable risk of bodily harm to guests and patrons receiving services at the 12Fit Gym & Spa within the Loews Philadelphia Hotel.

122.    Mr. McNeill had a lengthy criminal history—including charges for fleeing the police, kidnapping and repeatedly raping a child, and indecent assault at another spa just two months before Mr. McNeill assaulted Mrs. Court at the 12Fit Gym & Spa.

123.    Accordingly, Defendants Mr. Baer, LLB Gym, 12Fit and the Loews Entities had actual and constructive knowledge that Mr. McNeill posed a grave and imminent threat of sexually assaulting guests, patrons and invitees receiving services at the 12Fit Gym & Spa within the Loews Philadelphia Hotel.

124.    Despite having this knowledge, Defendants Mr. Baer, LLB Gym, 12Fit and the Loews Entities continued to allow and provide Mr. McNeill physical access to, and interaction with, nude or nearly-nude hotel patrons and guests in a private space within the 12Fit Gym & Spa and Loews Philadelphia Hotel.

125.    Defendants Mr. Baer, LLB Gym, 12Fit and the Loews Entities breached their duty to take reasonable precautions to protect their guests, patrons and invitees, including Mrs. Court,

from criminal acts, and emotional distress stemming therefrom, that were reasonably foreseeable within the Loews Philadelphia Hotel, by, among other things:

(a)    failing to conduct personal, employment and criminal background checks on Mr. McNeill prior to hiring him as a massage therapist at the fitness center and spa in the Loews Philadelphia Hotel in July 2014 and thereafter;

(b)    ignoring the risk of physical and emotional harm to their patrons posed by Mr. McNeill;

(c)    hiring, retaining and/or failing to supervise an employee, agent, servant and/or independent contractor (Mr. McNeill) whom Defendants knew, or by the exercise of reasonable care should have known, had a history of inappropriate behavior towards guests, was a convicted criminal, and had an outstanding charge for indecent assault of a customer at Mr. McNeill's prior place om employment;

(e)    affirmatively misrepresenting to Mrs. Court, a Loews Philadelphia Hotel guest, that the hotel and 12Fit was a safe environment, thereby inducing Mrs. Court to physically interact, while nude or semi-nude, with Mr. McNeill, a dangerous criminal;

(f)    operating the premises at the 12Fit Spa & Gym in such a way as to encourage illegal, lewd and/or illicit sexual activity, and thereby attracting individuals and/or employees that were seeking an opportunity to engage in further illegal sexual activity;

(g)    failing to warn Mrs. Court of the actual and significant dangers she was likely to encounter in 12Fit and in the presence of Mr. McNeill; and

(h)    failing to ensure that reasonable and prudent policies and procedures were in place once an employee is notified that an assault or sexual assault has occurred, and to

properly train and supervise employees to ensure that such polices are properly implemented.

126.    As a direct and proximate result of Defendants' breach of the aforementioned duties, Mrs. Court sustained physical pain and suffering and severe and debilitating mental distress, including, but not limited to: physical and mental trauma, abrasions, shock, numbness, fear, anxiety, involuntary and intrusive memories, disassociation, loss of trust, fear of travel, nightmares, flashbacks, panic attacks, lack of initiative, interference with personal relationships, diminished interest in pre-trauma activities, persistent inability to experience positive emotions, functional impairment in social and occupational settings, constricted affect, guilt, shame, anger and depression.

127.    Mrs. Court duly and promptly reported the assault to employees of each of the Defendants and she relied upon each of their staffs for assistance.  The Defendants, individually and jointly, breached the standard of care owed to Mrs. Court as a business invitee by failing to exercise due care.  Instead, the Defendants failed to notify the police immediately of the sexual assault; and they actively encouraged Mrs. Court and A.M. not to report the assault to the police, and thereby allowing Mr. McNeill to avoid arrest, protecting the Defendants from damaging publicity and causing Mrs. Court to suffer ongoing emotional trauma.

128.    The Defendants also re-victimized and caused physical and emotion harm to Mrs. Court, as described herein, by failing to have any procedures in place to provide support or guidance for a guest assaulted and victimized on their premises.

129.    The actions of the Defendants as alleged herein were outrageous, intentional, malicious and/or conducted with reckless indifference to Mrs. Court's rights, thereby justifying an

award of punitive damages to be imposed against Mr. Baer, the Loews Entities, LLB Gym and 12Fit, individually.

## COUNT IV
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

130.    The allegations of paragraphs 1 through 129 are incorporated herein by reference with the same force and effect as if set forth in full below.

131.    Defendant Mr. Baer, LLB Gym and 12Fit, individually and through their agents and/or joint venturers, the Loews Entities, had a duty to exercise reasonable and ordinary care in the operation of the 12Fit Gym & Spa and in the hiring and supervision of its employees, agents, servants and independent contractors, all to the benefit of guests, patrons, business invitees, and persons like Mrs. Court.

132.    Defendant Loews Entities, individually and through its agents and/or joint venturer, Mr. Baer, LLB Gym and 12Fit, had a duty to exercise reasonable and ordinary care in the operation of the Loews Philadelphia Hotel and its amenities, in the selection and retention of its tenants to provide services to guests at the hotel, and in the hiring and supervision of its employees, agents, servants and independent contractors, all to the benefit of guests, patrons, business invitees, and persons like Mrs. Court.

133.    Defendants were on notice that criminal activity of a sexual nature could and did occur in spas and fitness centers that were open to members of the public in general, and specifically in their own facilities; they knew or reasonably should have known that they had an obligation to safeguard against, and protect their business invitees from, criminal activity of a sexual nature in the fitness centers they managed and operated; and, without such safeguard and appropriate policies and procedures in place, fitness centers could attract further criminal activity

of a sexual nature and individuals seeking opportunities to engage in criminal activity of a sexual nature.

134.    Defendants knew, or through the exercise of ordinary and reasonable care, should have known, that victims of sexual assault and other crimes of a sexual nature are highly likely to suffer emotional distress, including trauma, shock, numbness, fear, anxiety, involuntary and intrusive memories, guilt, shame, anger and depression.

135.    Defendants had a duty to take reasonable precautions to protect their guests, patrons and business invitees from criminal acts that were reasonably and actually anticipated at the fitness center and spa in the Loews Philadelphia Hotel, including criminal activity of a sexual nature, including, but not limited to, sexual assault, and crimes committed by individuals seeking opportunities to engage in criminal activity of a sexual nature.

136.    Defendants had a duty to supervise and exercise reasonable care to control their employees and independent contractors to prevent them from intentionally harming others or from conducting themselves in a way that could create an unreasonable risk of emotional harm to guests, patrons and invitees receiving services at the 12Fit Gym & Spa within the Loews Philadelphia Hotel.

137.    Mr. McNeill had a lengthy criminal history—including a charge for raping a child and indecent assault at another spa just two months before Mr. McNeill assaulted Mrs. Court.

138.    Accordingly, Defendants Mr. Baer, LLB Gym, 12Fit and the Loews Entities had actual and constructive knowledge that Mr. McNeill posed a grave and imminent threat of sexually assaulting guests, patrons and invitees receiving services at the 12Fit Gym & Spa within the Loews Philadelphia Hotel.

139.    Despite having this knowledge, Defendants continued to allow and provide Mr. McNeill physical access to, and interaction with, nude or nearly-nude hotel patrons and guests in a private space within the 12Fit Gym & Spa and Loews Philadelphia Hotel.

140.    Defendants breached their duty to take reasonable precautions to protect their guests, patrons and invitees, including Mrs. Court, from criminal acts, and emotional distress stemming therefrom, that were reasonably foreseeable within the Loews Philadelphia Hotel, by, among other things:

(a)    failing to conduct personal, employment and criminal background checks on Mr. McNeill prior to hiring him as a massage therapist at the fitness center and spa in the Loews Philadelphia Hotel in July 2014 and thereafter;

(b)    granting and continuing to allow Mr. McNeill access to nude or nearly nude patrons in a private setting;

(c)    ignoring the risk of physical and emotional harm to their patrons posed by Mr. McNeill;

(d)    hiring, retaining and/or failing to supervise an employee, agent, servant and/or independent contractor (Mr. McNeill) whom Defendants knew, or by the exercise of reasonable care should have known, had a history of inappropriate behavior towards women, was a convicted criminal, and had an outstanding charge for indecent assault of a customer at Mr. McNeill's prior place om employment;

(e)    affirmatively representing to Mrs. Court, a Loews Philadelphia Hotel guest, that 12Fit was a safe environment, and by failing to warn Mrs. Court of the significant dangers she was likely to encounter in 12Fit; and

(f)    failing to ensure that reasonable and prudent policies and procedures were in place once an employee is notified that an assault or sexual assault has occurred, and to properly train and supervise employees to ensure that such polices are properly implemented.

141.    As a direct and proximate result of Defendants' breach of the aforementioned duties, Mrs. Court sustained physical pain and suffering and severe and debilitating mental distress, including, but not limited to:  physical and mental trauma, sleeplessness, shock, numbness, fear, anxiety, involuntary and intrusive memories, disassociation, loss of trust, fear of travel, nightmares, flashbacks, interference with personal relationships, diminished libido, fear of intimacy, lack of initiative, diminished interest in pre-trauma activities, persistent inability to experience positive emotions, functional impairment in social and occupational settings, constricted affect, guilt, shame, anger and depression.

142.    Mrs. Court duly and promptly reported the assault to the Defendants and she relied upon the Defendants for assistance.  Each of the Defendants breached the standard of care owed to Mrs. Court as a business invitee by failing to exercise due care.  Instead, the Defendants minimized Mrs. Court's complaint and failed to immediately notify the police of the sexual assault, thereby causing her to suffer additional emotional trauma.

143.    The actions of the Loews Entities, Mr. Baer, LLB Gym and 12Fit as alleged herein were outrageous, intentional, malicious and/or conducted with reckless indifference to Mrs. Court's rights, thereby justifying an award of punitive damages to be imposed against the Loews Entities, Mr. Baer, LLB Gym and 12Fit, individually.

## PRAYER

WHEREFORE, Plaintiff Elena Myers Court prays that judgment be entered in her favor and against Defendants Loews Philadelphia Hotel, Inc. d/b/a Loews Philadelphia Hotel; Twelfth Street Hotel Associates, L.P.; LPH Partner, Inc.; Loews Hotels Holding Corporation; Philadelphia Hotel Operating Company, Inc.; LLB Gym LLC, d/b/a 12Fit Spa and Gym; 12Fit LLC; Frank Baer; and Jerome McNeill, jointly and severally as follows:

(a)  awarding actual and compensatory damages;

(b)  awarding punitive damages, where appropriate;

(c)  awarding interest, costs of suit, and such other and further relief to which she may be justly entitled.

## DEMAND FOR JURY

Plaintiff hereby demands a trial by jury on all such issues triable thereto.

Respectfully submitted,

September 9, 2016

By: _David G Concannon_
David G. Concannon (DGC 2089)
david@davidconcannon.com
Matthew T. Charles
matt@davidconcannon.com
**CONCANNON & CHARLES**
200 Eagle Road, Suite 116
Wayne, Pennsylvania 19087
(610) 293-8084 Telephone
(610) 293-8086 Facsimile

**COUNSEL FOR PLAINTIFF ELENA MYERS COURT**

<u>**CERTIFICATE OF SERVICE**</u>

I certify that true and correct copies of this document were served upon the following by by electronic and/or U.S. Certified Mail, return receipt requested, on the date below:

Francis J. Deasey
DEASEY MAHONEY & VALENTINI, LTD.
1601 Market Street, Suite 3400
Philadelphia, Pennsylvania 19103
Fax: (215) 587-9456

***Attorneys for Defendants LLB Gym, LLC d/b/a 12 Fit Gym and Spa, and 12Fit LLC***

Pamela A. Carlos
BENNETT, BRICKLIN & SALTZBURG, LLC
1601 Market Street, 16th Floor
Philadelphia, Pennsylvania 19103
Fax: (215) 561-6661

***Attorneys for Defendants Loews Philadelphia Hotel, Inc., Twelfth Street Hotel Associates, L.P., LPH Partner, Inc., and Loews Hotels Holding Corporation***

Jerome McNeill
2067 East Venango Street
Philadelphia, Pennsylvania 19134

***Defendant***

Frank Baer
4350 Horseshoe Pike
Honeybrook, Pennsylvania 19344

***Defendant***

DATED:  September 9, 2016                */s/ David G. Concannon*
                                        David G. Concannon