**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ELENA MYERS COURT,** | : | |
| *Plaintiff*, | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | **No. 16-4848** |
| **LOEWS PHILADELPHIA** | : | |
| **HOTEL, INC. et al.,** | : | |
| *Defendants*. | : | |

PRATTER, J.                                                                              FEBRUARY 10, 2017

## MEMORANDUM

Elena Myers Court sued (i) Loews Philadelphia Hotel, Inc.; Twelfth Street Hotel Associates; LPH Partner, Inc.; and Loews Hotel Holding Company (the "Loews Defendants"); and (ii) LLB Gym, LLC; 12FIT LLC; and Frank Baer (the "Gym Defendants"), for negligence (Count 3) and negligent infliction of emotional distress ("NIED") (Count 4) arising out of an alleged sexual assault perpetrated by a massage therapist at a Loews' in-house spa operated by the Gym Defendants.[1]  The Gym Defendants have moved to dismiss the claims against them on the basis that provisions of the Pennsylvania Criminal History Record Information Act absolve them from all liability arising out of their hiring of Jerome McNeill, the massage therapist who allegedly assaulted Ms. Court.[2]  Because Ms. Court has stated a plausible claim for negligence, the Court will deny the Gym Defendants' Motion to Dismiss.

---

[1]       The Complaint also names Jerome McNeill, the alleged perpetrator, as a defendant, asserting causes of action against him for assault and battery (Count 1) and negligence and negligence *per se* (Count 2).  Mr. McNeill, however, has not appeared in this action.

[2]       The Loews Defendants have not moved to dismiss the claims asserted against them.

I.    ALLEGATIONS IN THE COMPLAINT

Ms. Court, while a guest at the Loews Philadelphia Hotel in September 2014, scheduled a sports massage at the 12Fit Spa & Gym, the Hotel's in-house spa.[3]  12Fit assigned Ms. Court a male masseuse, Jerome McNeill.  The massage began like many others—Ms. Court undressed to just her underwear and lay face down on a massage table, covering herself with sheets and a blanket.  The massage quickly escalated, however, to a massage unlike any other Ms. Court had ever experienced.  When Mr. McNeill began to massage Ms. Court's legs, he pulled the sheets covering Ms. Court up to a point where Ms. Court's private areas were exposed.  Mr. McNeill proceeded to massage up Ms. Court's legs until his hands were touching her underwear and rubbing against her genitals.  Ms. Court experienced complete shock as Mr. McNeill continued to massage her buttocks in a groping manner, which included repeated touching of her underwear and genitals.  Mr. McNeill then instructed Ms. Court to turn onto her back and continued to massage Ms. Court's upper legs in a similar fashion, with his hands repeatedly touching Ms. Court's underwear and genitals.  Ms. Court did not consent to the overtly sexual nature of the physical contact Mr. McNeill repeatedly made to her private areas.  Ms. Court, at 5' 4", who was undressed and alone in a room with the 6' 1" Mr. McNeill, was too afraid to speak while Mr. McNeill was groping at her body.

Immediately after the massage, Ms. Court informed 12Fit's manager that Mr. McNeill had assaulted her.  The manager did little to follow up on Ms. Court's allegation, merely leaving a note for his superior that Ms. Court was "uncomfortable" during her massage and "hinted to

---

[3]    The 12Fit Spa & Gym operated the Hotel's in-house spa and gym pursuant to a December 2013 lease agreement.  The lease included provisions that 12Fit would:  (i) operate its facilities in accordance with the standards maintained by the exercise facilities of other high quality convention hotels in Philadelphia; (ii) operate its facilities in accordance with the Hotel's standards and policies; (iii) provide all employees necessary to operate the facilities and that all employees would be 12Fit employees only; and (iv) not employ any person whose conduct was determined to be improper.  *See* Compl. ¶ 33 (Doc. No. 1).

being personally violated" by Mr. McNeill.  Compl. ¶ 64.  Ms. Court also spoke with Frank Baer, the president of LLB Gym and 12Fit, informing him that Mr. McNeill touched her "in a way she didn't feel comfortable with."  Compl. ¶ 65.  Mr. Baer acted "abrasively and dismissively" towards Ms. Court, Compl. ¶ 66, and did not encourage her to report her allegations to Hotel personnel or the police.  Mr. Baer and the 12Fit manager also did not report the allegations to Hotel personnel or the police.  Mr. McNeill denied Ms. Court's allegations when approached by Mr. Baer.

Mr. Baer also received a phone call from Ms. Court's mother the day of the alleged assault.  During their phone call, Ms. Court's mother provided details of the incident, including that during the massage Mr. McNeill was "rubbing his hands up and down [Ms. Court's] leg from foot [sic] up to her butt and crack and crotch," which caused Ms. Court to feel "personally violated."  Compl. ¶ 69.  Even after this phone call, Mr. Baer did not inform Hotel personnel or the police of the reported sexual assault.  Hotel management only learned about the incident after receiving a voicemail from Ms. Court's mother concerning the allegations.

After receiving Ms. Court's mother's message, and before speaking to Ms. Court's mother, the Managing Director of the Hotel approached Mr. Baer to learn more details about the allegations.  Mr. Baer provided the Managing Director with Mr. McNeill's professional licenses and insurance information, as well as his notes from his conversations with Ms. Court and her mother.  In conversations with Ms. Court and her mother, the Managing Director sought to deflect blame away from the Loews and Gym Defendants and onto Mr. McNeill.  The Managing Director also worked to persuade Ms. Court and her mother not to file a police report or otherwise contact law enforcement.  The Managing Director ultimately succeeded in persuading Ms. Court not to file charges, informing Mr. Baer that he considered "the matter closed" after

3

comping Ms. Court the cost of a night's stay at the hotel.  Compl. ¶ 78.  Neither the Loews

Defendants nor the Gym Defendants took any action with respect to Mr. McNeill as a result of

Ms. Court's allegations.

The Gym Defendants had employed Mr. McNeill for less than two months at the time of

the incident.  Mr. McNeill came to the Gym Defendants' attention in mid-July 2014 through

another of its massage therapists, who had previously worked with Mr. McNeill at a Hand &

Stone Massage and Facial Spa location.  Unbeknownst to the Gym Defendants, Hand & Stone

had fired Mr. McNeill on July 15, 2014 after a customer complained that Mr. McNeill had

grabbed his genitals during a massage.  This occurred two days before Mr. McNeill applied for a

job with the Gym Defendants.  The Gym Defendants were unaware of Mr. McNeill's past

employment at Hand & Stone because Mr. McNeill did not list Hand & Stone as a past employer

on the employment history portion of his application.  In fact, the job application's employment

history section was completely blank.  A short resume Mr. McNeill provided contained

employment information only through July 2013, a year before Mr. McNeill's employment by

the Gym Defendants.  The job application also required Mr. McNeill to address whether he had

ever been convicted of a crime.  Mr. McNeill answered affirmatively, informing the Gym

Defendants that he had been convicted for "Fleeing and [sic] officer on a motorcycle."  Compl.

¶ 42.  As part of his job application, Mr. McNeill authorized the Gym Defendants to conduct

checks of his criminal and employment histories.  After the Gym Defendants hired Mr. McNeill,

he informed them of his past employment at Hand & Stone, but did not mention why he was no

longer employed by Hand & Stone.

The Gym Defendants never conducted a criminal history check and failed to verify Mr.

McNeill's employment history.  Nor did the Gym Defendants contact Hand & Stone after Mr.

McNeill informed them of his past employment to verify his employment or inquire into why Mr. McNeill no longer worked there.  Had the Gym Defendants conducted a criminal history check, they would have learned that Mr. McNeill (i) had been arrested three times for traffic offenses involving fleeing or evading the police and (ii) was arrested and charged in 2007 with the alleged rape of a minor.[4]  Had the Gym Defendants taken steps to verify Mr. McNeill's past employment history, they would have discovered that Mr. McNeill had recently been fired from a position as a massage therapist for touching a male customer's genitals.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes testing the legal sufficiency of a complaint.  Although Federal Rule of Civil Procedure 8 requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and internal quotation marks omitted) (alteration in original), the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* (citation omitted).

To survive a motion to dismiss, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ."  *Twombly*, 550 U.S. at 555 (citations omitted).  The question is not whether the claimant will ultimately prevail, but whether the complaint is "sufficient to cross the federal court's threshold."  *Skinner v. Switzer*, 562 U.S. 521, 529-30 (2011).

---

[4]     Mr. McNeill pleaded guilty to the traffic offenses.  The charges related to the alleged rape were withdrawn or *nolle prossed*.

To decide a Rule 12(b)(6) motion to dismiss, the Court may look only to the facts alleged in the complaint and its attachments.  *See Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).  The Court may also consider documents that are "integral to or explicitly relied upon in the complaint . . . without converting the motion [to dismiss] into one for summary judgment."  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citation omitted).  The Court must accept as true all well-pleaded allegations in the complaint and view them in the light most favorable to the plaintiff.  *Angelastro v. Prudential-Bache Sec., Inc.*, 764 F.2d 939, 944 (3d Cir. 1985).  Likewise, the Court must accept as true all reasonable inferences that may be drawn from the allegations, and view those facts and inferences in the light most favorable to the non-moving party.  *See Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989).

## III.   DISCUSSION

Ms. Court's claims against the Gym Defendants are Pennsylvania state law claims sounding in negligence.  The Gym Defendants argue that they had no duty to conduct a more thorough pre-employment investigation into Mr. McNeill because the Pennsylvania Criminal History Record Information Act ("CHRIA")[5] would have legally prohibited them from considering any of the information they could have discovered about Mr. McNeill's past.

---

[5]     Section 9125 of the CHRIA provides, in pertinent part:

> **(a)  General Rule.--**Whenever an employer is in receipt of information which is part of an employment applicant's criminal history record information file, it may use that information for the purpose of deciding whether or not to hire the applicant, only in accordance with this section.

> **(b)  Use of information.--**Felony and misdemeanor convictions may be considered by the employer only to the extent to which they relate to the applicant's suitability for employment in the position for which he has applied.

18 Pa.C.S. § 9125.  "Criminal history record information" includes "dates and notations of arrests."  18 Pa.C.S. § 9102.

Essentially, the Gym Defendants argue that Ms. Court's negligence claims can succeed only if the Court determines that the Gym Defendants should have violated the CHRIA during Mr. McNeill's application process.  This argument, however, relies on a counterfactual analysis of what *might* have happened based on hypothetical facts that are not in the Complaint.  At this stage, on a motion to dismiss, the Court's role is to analyze the sufficiency of the allegations in the complaint.  The question, then, is whether Ms. Court has stated plausible claims for negligence and NIED.  She has.

### A.    Negligence (Count 3)

The Complaint's central allegations are based on a theory that the Gym Defendants were negligent in hiring and/or supervising Mr. McNeill.  A claim for negligent hiring or supervision under Pennsylvania law requires a plaintiff to demonstrate the four elements of a common law negligence claim:  duty, breach, causation, and damages.  *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 487-88 (3d Cir. 2013) (citing *Brezenski v. World Truck Transfer, Inc.*, 755 A.2d 36, 42 (Pa. Super. 2000)).  A claim for negligent hiring under Pennsylvania law requires a plaintiff to demonstrate that (i) an employer knew or should have known of an employee's propensity for violence, and (ii) the employment created a situation where the violence could harm a third party.  *Coath v. Jones*, 419 A.2d 1249, 1250 (Pa. Super. 1980); *see also Rios v. Marv Loves 1*, No. 13-1619, 2015 WL 5161314, at *13 (E.D. Pa. Sept. 2, 2015).  To recover for a claim of negligent supervision, a plaintiff must demonstrate that an employer failed to exercise ordinary care to prevent intentional harm to a third party when that harm was (i) committed on the employer's premises, (ii) committed by an employee acting outside the scope of his or her employment, and (iii) was reasonably foreseeable.  *Belmont*, 708 F.3d at 487-88.  Harm is reasonably foreseeable when "it is part of a general type of injury that has a reasonable

likelihood of occurring." *Id.* at 491.  An employer can only be liable for negligent supervision if it knew, or should have known, that "the employee ha[d] dangerous propensities that might cause harm to a third party." *Id.*

At issue here is whether (i) Ms. Court sufficiently alleged that the Gym Defendants had a duty to investigate Mr. McNeill's criminal and employment histories such that they should have known of his alleged propensity for sexual violence, (ii) Ms. Court sufficiently alleged that the Gym Defendants breached that duty, and (iii) the CHRIA operates to absolve the Gym Defendants from any liability arising out of their hiring of Mr. McNeill.

### 1.   Duty to Conduct Pre-employment Investigation

Employers have a duty under Pennsylvania law "to exercise reasonable care in selecting, supervising and controlling employees." *R.A. ex rel. N.A. v. First Church of Christ*, 748 A.2d 692, 697 (Pa. Super. 2000); *see also Belmont*, 708 F.3d at 488.  Pennsylvania appellate courts have looked toward § 213 of the Restatement (Second) of Agency and § 317 of the Restatement (Second) of Torts when determining an employer's liability in negligent hiring and supervision cases.  *See Dempsey v. Walso Bureau, Inc.*, 246 A.2d 418, 421 (Pa. 1968) (noting Pennsylvania's adoption of § 317 of the Restatement (Second) of Torts); *Brezenski*, 755 A.2d at 42 (explaining that § 213 and § 317 do  "no more than restate the existing tort law of Pennsylvania" (quoting *First Church of Christ*, 748 A.2d at 697)); *Heller v. Patwil Homes, Inc.*, 713 A.2d 105, 107 (Pa. Super. 1998) ("Our recognition of direct employer liability for its negligence is consistent with Section 213 of the Restatement (Second) of Agency . . . .").

Section 213 provides that "[a] person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless . . . in the employment of improper persons or instrumentalities in work involving risk of harm to

others . . . ."  Restatement (Second) of Agency § 213 (1958).  Comment d to § 213 explains that an employer's direct liability for the action of its employee can stem from an employer's failure to take "the care which a prudent man would take in selecting the person for the business in hand."  Restatement (Second) of Agency § 213 cmt. d.  Where a prospective employee's work will subject third parties to the risk of harm, "there is a special duty of investigation." Restatement (Second) of Agency § 213 cmt. d.; *cf. Welsh Mfg., Div. of Textron, Inc. v. Pinerkton's, Inc.*, 474 A.2d 436, 440-41 (R.I. 1984) (explaining that the scope of an employer's pre-employment investigation is correlated with the degree of risk posed by the potential employment); *Ponticas v. K.M.S. Invs.*, 331 N.W.2d 907, 913 (Minn. 1983) ("The scope of the [pre-employment] investigation is directly related to the severity of risk third parties are subjected to by an incompetent employee.").[6]  Section 317, meanwhile, imposes liability on an employer when the employer "knew or, in the exercise of ordinary care, should have known of the necessity for exercising control of [its] employee."  *Dempsey*, 246 A.2d at 422; *accord* Restatement (Second) or Torts § 317 (1965).

 The job of a massage therapist is highly sensitive and carries a significant amount of risk to third parties.  Massage therapists come into contact with the public on a daily basis.  Massage therapists' jobs place them in a position of power over potentially vulnerable clients, who are frequently nude or semi-nude.  There is always a risk that a massage therapist will abuse his or her power and act inappropriately towards a vulnerable client.  Ms. Court's allegations are an example of what can transpire if an employer places its trust in the wrong massage therapist.

---

[6] The Pennsylvania Supreme Court has never directly addressed § 213.  Accordingly, the Court has looked to *Welsh* and *Ponticas*, decisions from other state supreme courts analyzing § 213, for guidance.  *See Koppers Co., Inc. v. Aetna Cas. & Sur. Co.*, 98 F.3d 1440, 1445 (3d Cir. 1996) ("In the absence of guidance from the state's highest court, we must look to decisions of state intermediate appellate courts, of federal courts interpreting that state's law, and of other state supreme courts that have addressed the issue.").

Accordingly, the Court finds that Ms. Court has sufficiently pleaded that the Gym Defendants had a duty to, at a minimum, conduct a more thorough pre-employment investigation into Mr. McNeill's prior employment history.

2.   Breach of Duty to Conduct Pre-employment Investigation

Pennsylvania courts have suggested that an employer can be held responsible for the intentional acts of employees where a reasonable investigation into an employee's background would have revealed prior criminal or violent propensities related to the employee's position. *See, e.g.*, *Dempsey*, 246 A.2d at 423 (employer not liable for negligent hiring or supervision because (i) the employer's investigation into the employee's employment and criminal history revealed no wrongdoing and (ii) there was no evidence that a more thorough investigation would have revealed any prior misconduct by the employee); *Heller*, 713 A.2d at 106-09 (employer not liable for negligent hiring because the misconduct that would have been revealed by a more thorough investigation was unrelated to the job for which the employee was hired).

Here, in contrast to the employer in *Dempsey*, Ms. Court has alleged that the Gym Defendants failed to conduct any investigation into Mr. McNeill's past before hiring him, let alone a reasonable investigation.[7]  The Complaint alleges that the Gym Defendants did not inquire into the one year gap in Mr. McNeill's employment history prior to his employment and that the Gym Defendants failed to contact Hand & Stone after Mr. McNeill informed them that Hand & Stone was his most recent employer.  It can also be reasonably inferred from the

---

[7]     At oral argument, counsel for the Gym Defendants suggested that the Court should infer from the Complaint's allegation that "12Fit first became aware of Mr. McNeill . . . after another one of its massage therapists . . . indicated that she worked with Mr. McNeill at the Hand & Stone Massage and Facial Spa," Compl. ¶ 37, that the Gym Defendants took steps to verify Mr. McNeill's past employment at Hand & Stone.  Not only does the Complaint fail to include any indication that the Gym Defendants verified Mr. McNeill's employment history, but the Court must draw all reasonable inferences from the Complaint in Ms. Court's favor, not in favor of the Gym Defendants.  *See Rocks*, 868 F.2d at 645.

Complaint that any type of investigation into Mr. McNeill's prior employment would have revealed the Hand & Stone incident prior to Mr. McNeill coming into contact with Ms. Court. And, unlike in *Heller*, a reasonable investigation into Mr. McNeill's past would have revealed misconduct directly related to Mr. McNeill's job as a massage therapist.

The Gym Defendants argue that they satisfied any duty owed to Ms. Court because they justifiably relied on Mr. McNeill's massage therapy license, which was in good standing at the time the Gym Defendants hired Mr. McNeill.  The Gym Defendants assert that the Commonwealth of Pennsylvania regulates massage therapists and that Mr. McNeill's massage license indicated that he was of "good moral character."  *See* 63 P.S. §§ 627.5(a)(1), 627.5(b)(2). This argument is unavailing.  Pennsylvania's massage therapy licensing board relies on massage therapists to self-report "the filing of formal criminal charges."  49 Pa. Code § 20.31(d)(2).  The Court is not convinced that, as a matter of law, an employer's duty to conduct a pre-employment investigation is met solely by relying on a license subject to *self-reporting* requirements. Furthermore, the Court is not prepared to acknowledge a safe harbor from negligent hiring and/or supervision actions for employers that rely on a prospective employee's professional license.  The Gym Defendants have provided no case law to support such a proposition.

Accordingly, the Court finds that Ms. Court has sufficiently pleaded that that the Gym Defendants breached a duty, which resulted in her injuries.  *See, e.g.*, *Doe v. Schneider*, 667 F. Supp. 2d 524, 531-32 (E.D. Pa. 2009) (allowing negligent hiring claim to survive a motion to dismiss where a plaintiff alleged that an employer "failed to properly investigate [an employee's] background before hiring him").

3.   <u>The Gym Defendants' CHRIA Defense</u>

The Gym Defendant's Motion to Dismiss primarily argues that had the Gym Defendants taken the steps Ms. Court alleges they were negligent in failing to do (e.g., investigating Mr. McNeill's criminal and employment histories), they would only have discovered information that Pennsylvania law prohibits them from taking into consideration when making their hiring decisions.  The Gym Defendants argue that the law cannot impose a duty on an employer to break the law.  It is premature at this juncture, however, to analyze the hypothetical application of the CHRIA based on information that the Gym Defendants might have accessed had they conducted a more thorough pre-employment investigation into Mr. McNeill's past.

Furthermore, the allegations in the Complaint do not, at least need not, necessarily implicate the CHRIA.  The CHRIA limits what information from an applicant's criminal record information file an employer can consider when making hiring decisions.  Employers can consider an applicant's prior convictions to the extent they relate to the position sought; employers cannot consider an applicant's prior arrests.  18 Pa.C.S. § 9125; *Foxworth v. Pa. State Police*, 228 F. App'x 151, 154-55 (3d Cir. 2007).  The CHRIA does not shield an applicant's prior misconduct from an employer's hiring determination when the employer learns about the misconduct through a means *other than* the applicant's criminal record information file.  *See Foxworth*, 228 F. App'x at 155.  In *Foxworth*, the Third Circuit Court of Appeals noted that § 9125 did not apply to an employer's consideration of an applicant's "criminal misbehavior" because the employer learned about the misconduct through the applicant's own disclosure on an application form, not through a criminal records check.  *Id.*

Ms. Court does not allege that the Gym Defendants had access to Mr. McNeill's criminal record information file.  And, while the Complaint does allege that the Gym Defendants were

negligent in not conducting a criminal background check, the Complaint also alleges that the Gym Defendants were negligent in failing to verify Mr. McNeill's employment history.  Had the Gym Defendants learned about the Hand & Stone incident through a more thorough investigation into Mr. McNeill's employment history, the CHRIA would not have prevented them from taking that incident into consideration when making their employment determination.[8]

\*          \*          \*

Ms. Court sufficiently pleaded that the Gym Defendants breached a duty to exercise reasonable care in hiring and supervising Mr. McNeill, which resulted in Ms. Court's injury. Accordingly, the Court will deny the Gym Defendants' motion to dismiss Ms. Court's negligence claim.

### B.    Negligent Infliction of Emotional Distress (Count 4)

Pennsylvania law recognizes a claim for NIED in four factual scenarios:  "(1) situations where the defendant had a contractual or fiduciary duty toward the plaintiff; (2) the plaintiff was subjected to a physical impact; (3) the plaintiff was in a zone of danger, thereby reasonably experiencing a fear of impending physical injury; or (4) the plaintiff observed a tortious injury to

---

[8]          Whether Mr. McNeill's arrest in connection with the Hand & Stone incident would even have appeared on a criminal background check at the time of Mr. McNeill's July 17, 2014 application is not clear to the Court.  While the Complaint indicates that Mr. McNeill was arrested on July 30, 2014, Compl. ¶ 50, both parties' briefs and Mr. McNeill's criminal docket sheet indicate Mr. McNeill was arrested on July 15, 2014.  *See* Def. Br. in Supp. of Mot. to Dismiss 3, Ex. C at 1 (Doc. No. 29); Pl. Br. in Opp. 11 (Doc. No. 34).  To further complicate matters, both parties represented at oral argument that Mr. McNeill was not arrested until after he applied for employment with the Gym Defendants.  The exact date of arrest, however, is not relevant to the Court's determination.  Either the arrest occurred after Mr. McNeill's application process, in which case the CHRIA would not have prevented the Gym Defendants from considering the Hand & Stone incident, or the arrest occurred before Mr. McNeill applied, in which case the CHRIA would not have prevented the Gym Defendants from considering the application had they learned about the Hand & Stone incident from a source other than Mr. McNeill's criminal record information file.  *See Foxworth*, 228 F. App'x at 155.

a close relative." *Toney v. Chester Cty. Hosp.*, 961 A.2d 192, 197-98 (Pa. Super. 2008), *aff'd*, 36 A.3d 83 (Pa. 2011) (citation omitted).  A plaintiff seeking recovery for NIED must also make out the traditional elements of a negligence claim.  *Id.* at 198.

Here, the Gym Defendants argue that Ms. Court has not stated a plausible claim for NIED because she has failed to make out the predicate claim for negligence.  As discussed above, the Court finds that Ms. Court sufficiently pleaded a claim for relief against the Gym Defendants for negligence.  Because the Gym Defendants' alleged negligence resulted in Ms. Court being subjected to a physical impact, Ms. Court has stated a plausible claim for NIED. Accordingly, the Court will deny the Gym Defendants' motion to dismiss Ms. Court's NIED claim.

### C.    Punitive Damages

The Gym Defendants also argue that the Court should strike Ms. Court's requests for punitive damages because (i) a claim for negligent hiring cannot sustain an award for punitive damages, and (ii) the Complaint's allegations cannot support a finding that the Gym Defendants acted willfully or with malicious intent.

A plaintiff can obtain punitive damages in Pennsylvania if he or she presents evidence "sufficient to establish that (1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and that (2) [the defendant] acted, or failed to act, as the case may be, in conscious disregard of that risk."  *Hutchison ex rel. Hutchison v. Luddy*, 870 A.2d 766, 772 (Pa. 2005).  Pennsylvania courts only award punitive damages, however, "for outrageous conduct, that is, for acts done with a bad motive or with a reckless indifference to the interests of others."  *Chambers v. Montgomery*, 192 A.2d 355, 358 (Pa. 1963) (citation omitted).

A punitive damages award is not justified where a "defendant's mental state rises to no more than gross negligence." *SHV Coal, Inc. v. Continental Grain Co.*, 587 A.2d 702, 705 (Pa. 1991).

As an initial matter, the Court notes that the Supreme Court of Pennsylvania has explicitly held that punitive damages can be awarded in actions premised on negligent hiring and/or supervision. *Hutchison*, 870 A.2d at 772 ("[There is nothing] in law or logic to prevent the plaintiff in a case sounding in negligence from undertaking the additional burden of attempting to prove . . . that the defendant's conduct not only was negligent but that the conduct was also outrageous, and warrants a response in the form of punitive damages."). Ms. Court is therefore not precluded from asserting a claim for punitive damages merely because she has sued the Gym Defendants under a negligence theory.

At this time, the Court is not willing to determine that, as a matter of law, the facts contained in the Complaint could never support a punitive damages award. *See Kane v. Chester Cty. Dep't of Children, Youth & Families*, 10 F. Supp. 3d 671, 694 (E.D. Pa. 2014) ("[F]or the purposes of a motion to dismiss, plaintiff has adequately pled facts which, if proven, could support an award for punitive damages."); *DeRitis v. Mc Garrigle*, No. 13-6212, 2014 WL 2892419, at *9  (E.D. Pa. June 25, 2014) (denying a pre-discovery motion to dismiss punitive damages demand as premature); *Papacoda v. A.I. Dupont Hosp. for Children of the Nemours Foundation*, No. 05-3003, 2006 WL 1789077, at *5 (E.D. Pa. June 26, 2006) (same).  If, after the completion of discovery, the Gym Defendants believe they have a good faith argument that the facts of this case cannot support a punitive damages award, then the Court will entertain a subsequent motion at that time.

**IV.    CONCLUSION**

For the foregoing reasons, the Gym Defendants' Motion to Dismiss is denied.


BY THE COURT:


S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

16