# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ELENA MYERS COURT,** | : | |
| *Plaintiff,* | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | **No. 16-4848** |
| **LOEWS PHILADELPHIA** | : | |
| **HOTEL, INC. et al.,** | : | |
| *Defendants.* | : | |

## M E M O R A N D U M

PRATTER, J.                                                               DECEMBER 15, 2017

### INTRODUCTION

A hotel guest was assaulted by a massage therapist during a massage session at a spa-gym located on the hotel premises. The guest sued both the gym and the hotel. Both the gym and the hotel have filed motions for summary judgment, and the issue of their notice of the therapist's violent history looms largest.

Because a reasonable jury could find that the gym should have been on notice of — and, arguably, should have taken action on — the therapist's history of sexual assault, the Court denies summary judgment for the gym except as to claims against the gym's owner. But because the guest has provided no cause of action to hold the hotel liable for the torts of the independent-contractor gym, the Court grants summary judgment for the hotel.

### FACTS

In 2014, the Loews Philadelphia Hotel contracted with the 12Fit Gym to operate a spa inside the hotel. 12Fit, in turn, hired Jerome McNeill as a massage therapist, but did so without conducting a criminal background check.

Mr. McNeill had a checkered past. In 2007, he was arrested and charged with the alleged rape of a minor. The charges were ultimately withdrawn. In 2013, he was convicted of reckless endangerment for fleeing a police officer on a motorcycle. In 2014, shortly before joining 12Fit, Mr. McNeill was fired from his job as a massage therapist at Hand & Stone Spa for sexually assaulting a patron, an accusation as to which he was acquitted in late 2016.

Before hiring Mr. McNeill, 12Fit did not verify Mr. McNeill's employment history. Nor did 12Fit contact his prior employer Hand & Stone to inquire into why Mr. McNeill no longer worked there. The extent of 12Fit's research on Mr. McNeill was to note that he had a then-valid Pennsylvania massage license.

On September 14, 2014, Mr. McNeill sexually assaulted Elena Myers Court, a Loews hotel guest, during a massage session. Loews and 12Fit largely ignored Ms. Court's on-site report of what happened. In the weeks that followed, Mr. McNeill sexually assaulted two more women, each of whom reached settlements with Loews.

## PROCEDURAL HISTORY

In September 2016, Ms. Court sued two groups of defendants, the "Loews Defendants" associated with the hotel, and the "Gym Defendants" associated with the 12Fit gym and spa. She alleged negligence, negligent hiring, and negligent infliction of emotional distress.[1] The Gym Defendants filed a motion to dismiss in late 2016, which was denied on February 13, 2017. *See Court v. Loews Philadelphia Hotel, Inc.*, No. 16-4848, 2017 WL 569522 (E.D. Pa. Feb. 13, 2017). Now, both groups of defendants have filed motions for summary judgment and presented oral arguments on the motions. Ms. Court opposes both motions.

---

[1] She also sued Mr. McNeill for assault and battery, negligence, and negligence *per se*. Mr. McNeill has not appeared in this action.

For the reasons that follow, the Court denies the Gym Defendants' motion (except as to the counts against 12Fit owner Frank Baer) and grants the Loews Defendants' motion.

<h2>STANDARD OF REVIEW</h2>

A court shall grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could return a verdict for the non-moving party. *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A factual dispute is "material" if it might affect the outcome of the case under governing law. *Id.* (citing *Anderson*, 477 U.S. at 248). Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the non-moving party. *See Anderson*, 477 U.S. at 255. However, "[u]nsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010).

The movant bears the initial responsibility for informing the Court of the basis for the motion for summary judgment and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on a particular issue, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. After the moving party has met the initial burden, the non-moving party must set forth specific facts showing that there is a genuinely disputed factual issue for trial by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" or by "showing that the

materials cited do not establish the absence or presence of a genuine dispute."  Fed. R. Civ. P. 56(c).

Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.

### ANALYSIS OF CLAIMS AGAINST THE GYM DEFENDANTS

The Gym Defendants' primary argument is twofold: they had no notice of the danger posed by Mr. McNeill, and even if they had notice, they were prohibited by Pennsylvania law from acting on it.  They use this argument to attack Ms. Court's claims for negligent hiring, negligent retention and supervision, and negligent infliction of emotional distress.

The Court first rejects this argument in the context of the claim for negligent hiring: a reasonable jury could find that the Gym Defendants should have been on notice, that they could have acted on that notice, and that their failure to do so warrants punitive damages.  Second, the Court applies the same reasoning to the claim for negligent retention and supervision.  Third, the Court rejects the same notice-based challenge to the claim for negligence infliction of emotional distress, as well as a separate argument based on proximate cause.  Fourth, the Court grants summary judgment as to any claims against 12Fit owner Frank Baer individually.

### I.   Negligent Hiring

In Pennsylvania, a negligent hiring claim requires a plaintiff to show the usual elements of negligence: duty, breach, causation, and damages.  *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 487–88 (3d Cir. 2013) (citing *Brezenski v. World Truck Transfer, Inc.*, 755 A.2d 36, 42 (Pa. Super. Ct. 2000)).  In addition, a plaintiff must demonstrate that the employer was on notice of the employee's propensity for violence and created a situation where the employee could harm someone.  *Coath v. Jones*, 419 A.2d 1249, 1250 (Pa. Super. Ct. 1980); *see also Rios v. Marv*

*Loves 1*, No. 13-1619, 2015 WL 5161314, at *13 (E.D. Pa. Sept. 2, 2015). The notice requirement relates to the usual elements of negligence in two ways: (1) but for the defendant's breach of the duty of reasonable care, the defendant would have known about the employee's dangerousness, and (2) the failure to know of (and act on) the dangerousness caused the plaintiff's injury.

Two incidents from Mr. McNeill's past would have put the Gym Defendants on notice of his propensity for sexual violence: his 2007 arrest for molesting a minor and his 2014 firing from his previous employer (Hand & Stone) for allegedly sexually assaulting a client.

The Gym Defendants' only two avenues for discovering these prior incidents were for the Gym Defendants to have checked Mr. McNeill's criminal records and asked Hand & Stone why Mr. McNeill was fired. It is undisputed that the Gym Defendants did not do so and did not otherwise verify Mr. McNeill's criminal or employment history. Thus, the issue here turns on whether the Gym Defendants should have been obliged to perform such verification, and, had they done so, would have learned (and been legally able to act on) any material information. For the reasons that follow, the Court holds that (A) the Gym Defendants breached their duty to conduct a reasonable investigation; (B) that breach caused Ms. Court's injuries; and (C) Ms. Court's damages may include punitive damages.

### A. Relying only on Mr. McNeill's massage license did not satisfy the Gym Defendants' duty of reasonable care as a matter of law.

As an initial matter, the Gym Defendants argue that they did not breach any duty of care. They point out that they relied on Mr. McNeill's massage license in hiring him. As the Court explained in February, this reliance does not satisfy their duty of reasonable investigation as a matter of law:

> The Gym Defendants argue that they satisfied any duty
> owed to Ms. Court because they justifiably relied on Mr. McNeill's

> massage therapy license, which was in good standing at the time
> the Gym Defendants hired Mr. McNeill. The Gym Defendants
> assert that the Commonwealth of Pennsylvania regulates massage
> therapists and that Mr. McNeill's massage license indicated that he
> was of "good moral character." *See* 63 P.S. §§ 627.5(a)(1),
> 627.5(b)(2). This argument is unavailing. Pennsylvania's massage
> therapy licensing board relies on massage therapists to self-report
> "the filing of formal criminal charges." 49 Pa. Code § 20.31(d)(2).
> The Court is not convinced that, as a matter of law, an employer's
> duty to conduct a pre-employment investigation is met solely by
> relying on a license subject to self-reporting requirements.
> Furthermore, the Court is not prepared to acknowledge a safe
> harbor from negligent hiring and/or supervision actions for
> employers that rely on a prospective employee's professional
> license. The Gym Defendants have provided no case law to
> support such a proposition.

*Court*, 2017 WL 569522, at *5. What is more, 12Fit owner Frank Baer now admits that it was a

mistake to rely on the license alone. Plf. Statement of Facts ¶¶ 81–82. A reasonable jury could

find that the Gym Defendants breached their duty of reasonable care in investigating Mr.

McNeill before hiring him.

### B. A reasonable jury could find that breaching the duty of reasonable investigation caused Ms. Court's injuries.

As described above, Mr. McNeill was arrested and charged (but not convicted) of raping

a minor in 2007. A reasonable jury could conclude that the Gym Defendants' failure in 2014 to

check Mr. McNeill's criminal history fell below the standard of care in hiring. Had the Gym

Defendants checked Mr. McNeill's criminal background, they would have been on notice of Mr.

McNeill's violent past.

The Gym Defendants argue that their failure to run a background check was not a but-for

cause of Ms. Court's injuries. Put differently, they argue that, even if they had satisfied their

duty of reasonable care and learned of the 2007 arrest, they still would have hired Mr. McNeill

anyway. They contend that even if an adequate background check would have put them on

notice of Mr. McNeill's past, they could not have acted on that notice. The Gym Defendants

arrive at this unusually candid conclusion by reasoning that they were legally obligated *not* to consider the 2007 arrest because of the Criminal History Records and Information Act. The CHRIA provides, in pertinent part:

> **(a) General rule**. — Whenever an employer is in receipt of information which is part of an employment applicant's criminal history record information file, it may use that information for the purpose of deciding whether or not to hire the applicant, only in accordance with this section.
>
> **(b) Use of information**. — Felony and misdemeanor convictions may be considered by the employer only to the extent to which they relate to the applicant's suitability for employment in the position for which he has applied.

18 Pa. C.S. § 9125. "Criminal history record information" includes arrests. *Id.* § 9102. In other words, potential employers may only use information about an applicant's convictions, and only those convictions that relate to the applicant's fitness for the particular position. *See Foxworth v. Pa. State Police*, 228 F. App'x 151, 154–55 (3d Cir. 2007).

As an initial matter, the Gym Defendants here concede that they can identify only cases in which the CHRIA is a *sword* — imposing liability on a prospective employer for considering a prospective employee's criminal history. They cannot identify any cases that present the fact pattern here, in which an employer seeks to use the CHRIA as a *shield* — protecting the employer from liability to a third-party victim.

Still, the Gym Defendants argue that the CHRIA would have made it illegal for them to consider Mr. McNeill's 2007 arrest in making their hiring decision. But the staff that hired Mr. McNeill testified in their depositions in this case that they would not have hired him had they known about his past. This does not necessarily amount to an admission that they would have violated CHRIA.

Instead, a reasonable jury could conclude that running a criminal background check would have uncovered the 2007 arrest, and could then infer that this discovery should have touched off a further investigation. Furthermore, the jury could conclude that the investigation would have potentially yielded three paths for the Gym Defendants to decline to hire Mr. McNeill, none of which violate the CHRIA:

1. Question Mr. McNeill about his 2007 arrest and not hire him if he provides evasive answers.

2. Find a source other than Mr. McNeill's criminal record for information about the 2007 incident.

3. Check with staff at Mr. McNeill's previous employer to learn the circumstances of his departure.

The Court considers each path below.

*1.     Not hire Mr. McNeill for providing evasive answers to questions about his 2007 arrest.*

Had the Gym Defendants known about Mr. McNeill's 2007 arrest, they could have asked him about the incident. If the Gym Defendants thought that Mr. McNeill lied or was evasive, they could have refused to hire him for his dishonesty, or at least, perceived dishonesty.

An employer does not violate the CHRIA when it refuses to hire an applicant based on the applicant providing false or misleading information in the application process. *See McCorkle v. Schenker Logistics, Inc.*, No. 13-3077, 2014 WL 5020598, at *5–*6 (M.D. Pa. Oct. 8, 2014). The plaintiff in *McCorkle* was fired after his employer conducted an authorized criminal background check and discovered that the plaintiff omitted certain convictions from the criminal history portion of his application. *Id.* at *3. As part of the employment application, the plaintiff had agreed not to hold the defendant employer liable for refusing to hire him, or for firing him, if the employer based its action on the plaintiff providing "false, misleading, or incomplete information in [his] application . . . or other pre-employment questionnaires . . . ." *Id.* at *2. The

court concluded that the employer did not violate the CHRIA when it terminated the plaintiff based on his purposeful omissions from his employment application. *Id.* at \*6; *see also White v. PNC Bank*, No. 15-1345, 2016 WL 1404148, at \*6 (E.D. Pa. Apr. 11, 2016) (withdrawing employment based on an applicant's failure to cooperate with a pre-employment investigation did not violate the CHRIA); *Nelson v. DeVry, Inc.*, No. 07-4436, 2009 WL 1213640 (E.D. Pa. Apr. 23, 2009) (employer did not discriminate against applicants for purposes of Title VII when the employees were terminated for lying on their employment applications about their criminal backgrounds). A reasonable jury could conclude that the Gym Defendants caused Ms. Court's injury by failing to question Mr. McNeill about his 2007 arrest.

*2.     Find an independent (non–criminal record) source for the same information.*

The Gym Defendants could have used the 2007 arrest record as a jumping-off point to talk to another source of the same information. For example, the Gym Defendants could have tracked down someone who knew Mr. McNeill at the time of the arrest and had that person independently explain what happened. They could have then refused to hire Mr. McNeill on the basis of what the new source told them.

This course of action is not precluded by the CHRIA. As this Court explained in February: "The CHRIA does not shield an applicant's prior misconduct from an employer's hiring determination when the employer learns about the misconduct through a means other than the applicant's criminal record information file." *Court*, 2017 WL 569522, at \*6.

A reasonable jury could conclude that the Gym Defendants caused Ms. Court's injury by failing to seek non–criminal record sources for the information contained in Mr. McNeill's criminal record.

*3.     Check with staff at Hand & Stone Spa to learn the circumstances of Mr. McNeill's departure.*

Learning about the 2007 arrest would have spurred the Gym Defendants to follow up with Mr. McNeill's previous employer, Hand & Stone. A reasonable jury could infer that the staff would have learned about Mr. McNeill's assault there. Such an inference is not only reasonable, but also correct: Mr. McNeill's boss at Hand & Stone averred that she would have told the Gym Defendants that she would not rehire Mr. McNeill.[2] This statement, coupled with the Gym Defendants' knowledge of the 2007 arrest, would have given the Gym Defendants ample reason not to hire Mr. McNeill. In sum, the Hand & Stone Spa would have put the Gym Defendants on notice of Mr. McNeill's violent propensities, if the Gym Defendants had only asked.

A reasonable jury could conclude that the Gym Defendants caused Ms. Court's injury by failing to question Hand & Stone about the circumstances of Mr. McNeill's departure.

### C. A jury could reasonably conclude that the Gym Defendants' behavior warrants punitive damages.

To access punitive damages, a plaintiff must show that the defendant exhibited outrageous conduct due to an evil motive or reckless indifference to the rights of others. *Hutchinson v. Luddy*, 870 A.2d 766, 770 (Pa. 2005); *see also Chambers v. Montgomery*, 192 A.2d 355, 358 (Pa. 1963). A punitive damages award is not justified where a "defendant's

---

[2]    After the close of discovery, the Gym Defendants produced an affidavit from Dana Kline, Mr. McNeill's boss at Hand & Stone. But this affidavit is inadmissible because it is untimely. The last fact deposition was June 16. Ms. Kline's affidavit is dated July 10. It was served on Ms. Court on July 13. In other words, it was not disclosed until after discovery, and Ms. Kline was never disclosed as a witness.

Federal Rule of Civil Procedure 37 prohibits introducing evidence such as this affidavit after the close of discovery. It provides: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The Gym Defendants may not "swoop in" at the last minute with new evidence and a new witness. *Cf. Dry Dock LLC v. Godfrey Conveyor Co.*, 717 F. Supp. 2d 825, 829 (W.D. Wis. 2010) (refusing to permit, on Rule 37(c)(1) grounds, exhibits in response to proposed findings of fact that were not produced until the summary judgment stage).

mental state rises to no more than gross negligence." *SHV Coal, Inc. v. Continental Grain Co.*, 587 A.2d 702, 705 (Pa. 1991).

The Supreme Court of Pennsylvania has explicitly held that punitive damages can be awarded in actions premised on negligent hiring or supervision. *See Hutchison*, 870 A.2d at 772 ("[There is nothing] in law or logic to prevent the plaintiff in a case sounding in negligence from undertaking the additional burden of attempting to prove . . . that the defendant's conduct not only was negligent but that the conduct was also outrageous, and warrants a response in the form of punitive damages.").

The Gym Defendants argue that their conduct amounted to, at most, gross negligence. They point out that their employees relied on Mr. McNeill's massage license. In Pennsylvania, a licensee must undergo a criminal background check and have "good moral character." 63 P.S. §§ 627.5(a)(1) and (b)(2). In addition, the employees did not think they could ask Mr. McNeill's prior employer for why he was fired. Though this belief may have been unreasonable, it was not evil or outrageous.

In rebuttal, Ms. Court draws on similar incidents from before and after her assault. In 2003, a massage therapist at 12th Street Gym — which is also operated by 12Fit — sexually assaulted a client. *See 12th Street Gym, Inc. v. Phila. Indem. Ins. Co.*, 2006 Phila. Ct. Com. Pl. LEXIS 239 (July 25, 2006). Therefore, Ms. Court argues, 12Fit owners knew about the risks of having dangerous massage therapists. And after her assault, Ms. Court was mistreated by the Gym Defendants' staff. In essence, they did not take her allegation seriously. As a result, more women were assaulted. "Evidence of actual harm to nonparties can help to show that the conduct that harmed the plaintiff also posed a substantial risk of harm to the general public, and so was particularly reprehensible." *Philip Morris USA v. Williams*, 549 U.S. 346, 355 (2007).

The Court finds that a reasonable jury could find, in the context of prior and subsequent sexual assaults at 12Fit, that the Gym Defendants' behavior warrants punitive damages. Therefore, the Gym Defendants' motion is denied on this point.

## II.    Negligent Retention and Supervision and Failure to Warn

In addition to her claim for negligent hiring, Ms. Court alleges negligent retention, supervision, and failure to warn.  But these claims rise or fall with the claim for negligent hiring, hinging on whether the Gym Defendants had notice of the threat posed by Mr. McNeill and could have acted on that threat.  *See, e.g.*, *Belmont*, 708 F.3d at 491 (for negligent supervision, employer must have been on notice that "the employee ha[d] dangerous propensities that might cause harm to a third party."); *see also Coath v. Jones*, 419 A.2d 1249, 1250 (Pa. Super. Ct. 1980); *Hutchinson v. Luddy*, 742 A.2d 1052 (Pa. 1999); *Dempsey v. Walso Bureay, Inc.*, 246 A.2d 418, 422 (Pa. 1968) ("[I]t must be shown that the employer knew or, in the exercise of ordinary care, should have known of the necessity for exercising control of his employee.").  As explained above, a reasonable jury could conclude that the Gym Defendants should have known about the threat posed by Mr. McNeill.

Even if the Gym Defendants (erroneously) felt that they had to hire Mr. McNeill under the CHRIA, a reasonable jury could still find them liable for negligent supervision.  For example, a jury could conclude that 12Fit was unreasonable to leave Mr. McNeill alone with a female client; the spa should have sequestered him away from vulnerable clients.  Ms. Court further suggests that the spa could have had Mr. McNeill involved only in training other massage therapists, be supervised at all times by another employee, or give massages only to men his own size.

The Court agrees that a reasonable jury could find that the Gym Defendants could have taken *some* measures to protect their clientele from Mr. McNeill — and certainly would have

done so if they had had any notice of his violent tendencies. The Court therefore denies summary judgment as to these counts.

## III. Negligent Infliction of Emotional Distress

Ms. Court brings a claim for negligent infliction of emotional distress along with her ordinary negligence claim. A plaintiff seeking recovery for NIED must also make out the traditional elements of a negligence claim. *Toney v. Chester Cty. Hosp.*, 961 A.2d 192, 198 (Pa. Super. Ct. 2008). The parties agree that Ms. Court's NIED claim rises or falls with the negligence claim. Because the negligence claim survives summary judgment, the NIED claim does so too.

The Gym Defendants contend that a portion of Ms. Court's damages for NIED are cut off by the doctrine of proximate cause. Some of her emotional distress, they contend, was brought about by a superseding cause — Ms. Court's attorney informing her that Mr. McNeill had assaulted more women.

The Restatement (Second) of Torts provides factors that a Pennsylvania court considers in deciding whether a superseding cause has occurred:

a. An intervening force brings about a different kind of harm.
b. The force has extraordinary consequences in view of circumstances.
c. The intervening force is not normal result of the defendant's negligence.
d. The intervening force is due to third person's act.
e. The third person's act is wrongful.
f. The wrongful act of third person was done with a high degree of culpability.

RESTATEMENT (SECOND) OF TORTS § 442. Applying these facts to the phone call from Ms. Court's attorney to Ms. Court, the Gym Defendants reason: "[The phone call] brought about a

different kind of harm; was after the fact; independent of any alleged act or omission of Defendants; and the result of a third-party's actions."[3]

To rebut this argument, Ms. Court cites *Vattimo v. Lower Bucks Hospital, Inc.*, 465 A.2d 1231 (Pa. 1983), for the proposition that a *reasonably foreseeable* intervening act is not a superseding cause. *Id.* at 1237. It was foreseeable that Ms. Court would learn about Mr. McNeill's other victims eventually — for example, in the news. *See, e.g.*, Victor Fiorillo, *Massage Therapist in Loews Spa Scandal Convicted of Indecent Assault*, PHILA. MAG. (Oct. 5, 2017), http://www.phillymag.com/news/2017/10/05/loews-spa-sexual-assault-elena-myers-jerome-mcneill/.

The Court agrees with Ms. Court. *Vattimo* held that it was reasonably foreseeable that a person with paranoid-schizophrenic behavior and an obsession with fire would, if left alone in a hospital, set a fire. *Id.* It is just as foreseeable that a sexual assault victim, actively pursuing claims against the Gym and Loews Defendants, would learn about other victims. At the very least, a reasonable jury could conclude that Ms. Court would foreseeably learn about other victims.

## IV.    Individual Liability for Defendant Frank Baer

Finally, Frank Baer, the owner of 12Fit, was named as an individual Gym Defendant. He argues that he cannot be personally liable for the corporate defendants' negligent hiring. The rule in Pennsylvania is that a corporate officer is liable only for the torts he commits personally. *See Donsco, Inc. v. Casper Corp.*, 587 F.2d 602, 606 (3d Cir. 1978); *see also Wicks v. Milzoco Builders, Inc.*, 470 A.2d 86, 90 (Pa. 1983) ("The general, if not universal, rule is that an officer

---

[3]      The Gym Defendants also argue that a plaintiff may not claim damages for the emotional distress caused by litigation. *See Leporace v. N.Y. Life & Annuity Corp.*, 2014 U.S. Dist. LEXIS 62911, at *8 (E.D. Pa. May 7, 2014) (no damages for "litigation stress"). But Ms. Court's damages are not for "litigation stress." They arose when Ms. Court learned that Mr. McNeill had other victims — outside the litigation process.

of a corporation who takes part in the commission of a tort by the corporation is personally liable therefor; but that an officer of a corporation who takes no part in the commission of the tort committed by the corporation is not personally liable to third persons for such a tort . . . unless he specifically directed the particular act to be done or participated, or cooperated therein.").

Thus, Mr. Baer's liability for hiring Mr. McNeill boils down to his degree of involvement. Mr. Baer is involved in 12Fit's "day-to-day" operations and interviewed Mr. McNeill. He also made the final decision to hire Mr. McNeill. On the other hand, the hiring process was a team effort, and Mr. Baer delegated management responsibility to others.

The Court concludes that no reasonable jury could find Mr. Baer individually liable. The hiring process was a team effort. For instance, Kelli Mignona, another employee at 12Fit involved in the hiring process, thought that Mr. McNeill's massage license was evidence of his fitness to be hired. Therefore, only the corporate Gym Defendants could be liable for negligent hiring. The Court grants summary judgment for Mr. Baer on the claims against him.

### ANALYSIS OF CLAIMS AGAINST THE LOEWS DEFENDANTS

Ms. Court argues that the Loews Defendants are liable in four separate ways:

A. For the acts of its independent contractor (the Gym Defendants).
B. Under premises liability.
C. For negligently hiring the Gym Defendants.
D. Under a theory of apparent authority for holding itself out as the operator of the spa.

Each argument is considered below. For the reasons that follow, the Court grants summary judgment for the Loews Defendants.

## I. Vicarious Liability for 12Fit's Negligent Hiring

Ms. Court argues that Loews should be liable for the torts of the Gym Defendants. The usual rule is that a property owner who engages an independent contractor is not responsible for the acts of the independent contractor. *Nertavich v. PPL Elec. Utils.*, 100 A.3d 221, 227 (Pa.

Super. Ct. 2014); *see also Silveus v. Grossman*, 161 A. 362, 364 (Pa. 1932) ("Responsibility goes with authority."); *Beil v. Telesis Const. Inc.*, 11 A.3d 456, 466 (Pa. 2011).

Ms. Court must therefore shoehorn this case into one of two exceptions to the usual rule: (1) Loews exercised such control over the means and method of 12Fit's work that Loews itself can be said to have committed the tort, or (2) the work of the independent contractor was unusually dangerous. *See Beil*, 11 A.3d at 460–61. Neither exception applies here.

### A. First Exception — Controlling Means and Method

The "control over means and method" exception requires that the principal had more than a general right to order and inspect the independent contractor's work. Instead, the contractor must not be entirely free. *Nertavich*, 100 A.3d at 227.

In *Nertavich*, an electric company specified how its independent contractor (a painter) was to apply specific paint to telephone poles and listed specific safety provisions for the painter to follow. *Id.* at 230-35. The electric company created the position of "field contractor" to supervise the painting and reserved the right to undertake a safety performance audit. *Id.* Even so, the electric company was not liable for the negligence of the painter.

Similarly, in *Myszkowski v. Penn Stroud Hotel*, 634 A.2d 622 (Pa. Super. Ct. 1992), a franchisor was not liable for its franchisee's torts despite a contract containing quality control standards and providing for biannual inspections. *Id.* at 625. The court held that these contractual provisions address the *results* of the franchisee's work, not the *manner* of performance. *Id.* at 627; *see also Valles v. Albert Einstein Medical Center*, 758 A.2d 1238 (Pa. Super. Ct. 2000) (hospital was not liable for the torts of a surgeon because it did not exercise enough control over the surgery).

So too here. The contract between Loews and 12Fit provided that 12Fit would make all hiring decisions. As in *Myszkowski*, any control asserted by Loews was about the results, not the

manner, of hiring. For instance, the contract provided that 12Fit would not hire anyone "whose conduct has been improper" but did not specify how 12Fit should make that determination. In short, the lease set forth mere expectations about how the spa should be run.

Ms. Court seeks to distinguish the independent-contractor cases on the ground that they all involved *employees* of the contractor seeking to hold the principal liable. But Ms. Court does not explain why liability should be harder to impose for the injury to an employee than to a third party.

In sum, no reasonable jury could conclude that Loews so controlled the means and method of 12Fit's work that Loews itself can be said to have committed 12Fit's torts.

### B. Second Exception — Unusually Dangerous

The other exception to the general rule of no liability for the torts of an independent contractor is triggered when the work involves a peculiar risk that is different from the usual risk associated with the work. *Beil*, 11 A.3d at 460–61. Here, the massages ought not have been any more dangerous than ordinary massages.

Ms. Court cites this Court's prior opinion in this case for the proposition that "[t]he job of a massage therapist is highly sensitive and carries a significant amount of risk to third parties." *Court*, 2017 WL 569522, at *5. But this point does not demonstrate that the massages at 12Fit were more "sensitive" than usual. No reasonable jury could conclude that this massage work was more dangerous than ordinary massage work.

## II.    Premises Liability

Ms. Court argues that Loews, as the owner of the property, is liable for foreseeably dangerous conditions on the property. The general rule is that a business owner owes its invitee a duty to maintain the premises in a reasonably safe condition. *See David by Berkeley v. Pueblo Supermarket of St. Thomas*, 740 F.2d 230, 236 (3d Cir. 1984); *see also Feld v. Merriam*, 485

A.2d 742, 745 (Pa. 1984) (explaining the duty); *Carrender v. Fitterer*, 469 A.2d 120, 123 (Pa. 1983). As was the case for the Gym Defendants' liability for negligent hiring, this issue boils down to notice: whether Loews had reason to know that the assault committed by Mr. McNeill was going to occur. *Cf. Lee v. Walmart*, No 01-6905, 2003 U.S. Dist. LEXIS 3139, at *10-25 (E.D. Pa. 2003) (granting summary judgment when the defendant business did not know that a dangerous person would attack an invitee); *Rabutino v. Freedom State Realty Co.*, 809 A.2d 933, 939 (Pa. Super. Ct. 2002) (club owner aware of danger to guests was liable for shooting at club).

Ms. Court cites a number of cases in which the owner was on notice of the danger to invitees. *See, e.g.*, *Truax v. Roulhac*, 126 A.3d 991, 997–99 (Pa. Super. Ct. 2015) (bar on notice that a car might jump curb and injure a patron when this had happened in the past and the bar had taken steps to reinforce the sidewalk and parking lot); *Murphy v. Penn Fruit Co.*, 418 A.2d 480 (Pa. Super. Ct. 1980) (business had notice that customer might be mugged in parking lot when muggings happened as often as twice a day); *Moran v. Valley Forge Drive-In Theater, Inc*., 246 A.2d 375 (Pa. 1968) (business had notice because of 12 incidents involving firecrackers within a 2-year period).

Loews contends that it had no notice that Mr. McNeill was a danger. After all, he had worked at 12Fit for two months with no incidents before he assaulted Ms. Court. The Court agrees with Loews.

Ms. Court's arguments for why Loews was on notice are unpersuasive. For instance, she points out that the lease between Loews and 12Fit required insurance coverage for sexual harassment liability. But this does not speak to Loews's notice about any particular massage therapist. In addition, this argument proves too much; if accepted, the argument means that the holder of any slip-and-fall insurance policy is on notice of any such accident on the premises.

Next, Ms. Court argues that Loews should have known that it had a reputation for sexual assault, citing three such assaults in the months before Ms. Court's. But those assaults occurred in guest rooms, not at the 12Fit spa.

In sum, no reasonable jury could conclude that Loews should have known that Mr. McNeill's assault was going to occur.

## III. Liability for Negligently Hiring 12Fit

Ms. Court argues that Loews was negligent in hiring 12Fit. In essence, she alleges negligence within negligence; Loews's negligence in hiring 12Fit led to 12Fit's negligence in hiring Mr. McNeill. The general rule is that an injured third party can recover from a property owner for injuries caused by an independent contractor if the owner failed to use reasonable care in selecting the contractor. *Wilk v. Haus*, 460 A.2d 288 (Pa. Super 1983); *Mentzer v. Ognibene*, 597 A.2d 604, 609 (Pa. Super. Ct. 1991); *Silveus*, 161 A. at 378-80.

Ms. Court argues that Loews never properly vetted 12Fit. To begin, the 2003 assault at the 12th Street Gym should have given Loews pause. In addition, 12Fit's owner, Frank Baer, had no experience in massage therapy.

Loews counters that Mr. Baer had extensive experience in the hospitality industry as a restaurant and gym manager. Loews had no reason to believe that 12Fit would fail to conduct adequate background checks of its employees.

The Court agrees with Loews. One incident at the 12th Street Gym over a decade before Loews hired 12Fit does not render the hiring of 12Fit a negligent act. And although Mr. Baer did not have experience in the massage industry, he did have general hospitality experience, as well

as a team around him with massage experience.  In short, no reasonable jury could find Ms. Court's negligence-within-negligence theory persuasive.[4]

## IV.    Apparent Authority

Drawing on theories of apparent authority and agency by estoppel, Ms. Court argues that Loews held itself out as the owner and operator of the spa.  Liability based on apparent authority has two elements: (1) the defendant "held itself out" as a principal, and (2) the plaintiff reasonably relied on the defendant's representations.  *Myszkowski*, 634 A.2d at 629-30.

For instance, in *Cash v. Six Continental Hotels*, No. 03-3611, 2004 U.S. Dist. LEXIS 2901 (E.D. Pa. Feb. 19, 2004), a tour company had a desk in a hotel lobby.  When the tour company's negligence injured a client, the client sought to hold the hotel liable.  The court held that the client had failed to show any representations by the hotel that the touring company was its agent.  *Id.* at *5.  For instance, the touring company had its own sign on the desk in the lobby.  *Id.*

Similarly, here, there is no evidence that Loews represented that 12Fit would be its agent. The lease stated that the spa would operate under the name 12Fit.  In the spa, Loews was never mentioned.  The spa's intake form was labeled the "12Fit Gym and Spa."

In addition, Ms. Court has not demonstrated that she relied on 12Fit being the agent of Loews when she booked the massage.  *Cf. Myszkowski*, 634 A.2d at 630 n.10 (plaintiff's mere statement that the hotel was a nationwide chain did not create an issue of fact about reliance).

---

[4]      As with the NIED claim against the Gym Defendants, the NIED claim against Loews rises or falls with the ordinary negligence claim.  Because the Court grants summary judgment to Loews on the negligence claim, the Court does the same with respect to the NIED claim.

She simply wanted to go to a convenient spa in the hotel, which she booked before arriving at the Loews.[5]

CONCLUSION

For the foregoing reasons, the Court denies the Gym Defendants' motion for summary judgment as to all but the counts against Frank Baer.  The Court grants summary judgment for the Loews Defendants.

An appropriate order follows.

BY THE COURT:


<u>S/Gene E.K. Pratter</u>
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

---

[5]      At times, Ms. Court focuses on events that happened after her assault.  She alleges that Loews was negligent in its response to the assault, and that this negligence caused her emotional distress.  To support her case, Ms. Court cites the recent case of *Reason v. Kathryn's Korner Thrift Shop*, 2017 Pa. Super. LEXIS 618 (Pa. Super. Ct. Aug. 17, 2017).  But that case is about a business's duty to provide aid and summon assistance during an ongoing attack, so it does not speak to Loews's duties after the assault had ended.  To the extent that Ms. Court uses *Reason* as the basis for an independent claim against Loews for its post-assault behavior, that claim is dismissed.