IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ELENA MYERS COURT, | : | |
|         Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | No. 16-4848 |
| LLB GYM, LLC et al., | : | |
|         Defendants. | : | |

# MEMORANDUM

PRATTER, J.                                                                                                                              FEBRUARY 16, 2018

The Gym Defendants have filed a motion for reconsideration of this Court's December 15, 2017 Memorandum and Order, Doc. Nos. 93 and 94, which partially denied their motion for summary judgment. The gym raises five "clear error[s] of law," *see Howard Hess Dental Laboratories, Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 251 (3d Cir. 2010):

1. The Court relied on speculation to conclude that the gym could have found information about Jerome McNeill that would have justified not hiring him.

2. The Court held that the gym should have used information protected by the Criminal History Records and Information Act (CHRIA) as a starting point to find other information about Mr. McNeill.

3. The Court excluded the affidavit from Dana Kline for being provided after the close of discovery, without applying the proper Rule 37 standard.

4. The Court improperly allowed the punitive damages claim to go forward.

5. The Court improperly concluded that Ms. Court's emotional distress upon learning about subsequent victims was foreseeable.

For the reasons that follow, the Court agrees that the affidavit from Dana Kline ought to have been considered, but sees no merit in the other arguments. Furthermore, because admitting the Kline affidavit does not change the Court's ruling on summary judgment, the Court denies the motion for reconsideration and the alternative motion for interlocutory appeal.

1

### *1. The Court did not rely on speculation to conclude that the gym could have found information about Mr. McNeill that would have justified not hiring him.*

By failing to check Mr. McNeill's criminal history, the gym breached its duty of care in hiring. A jury could infer that, but for this breach, the gym would not have hired Mr. McNeill. The Court's Memorandum included at least three possible inferences that a jury could make. *See* Memorandum, Doc. No. 93, at 8–10. Each inference requires that the Court consider the line between permissible inference and pure speculation.

**First**, the jury could infer that the gym staff would have asked Mr. McNeill about his 2007 arrest for child molestation. *See id.* at 8–9. The gym now argues that the Court speculated that Mr. McNeill would have provided evasive answers, and that his perceived dishonesty would have been reason enough not to hire him.

To be sure, the Court cannot be certain that Mr. McNeill would have been evasive. Either he would have told the truth, or he would not have answered truthfully, or he could have been evasive. If he was untruthful (or if he omitted key details), his interview demeanor and perceived dishonesty would have been reason enough not to hire him. If he told the truth, then the gym staff could have concluded that he was unfit to be a massage therapist. As just mentioned, the interviewers would have also had the added opportunity to judge his demeanor while answering such inquiries. They also could have gone the extra mile and asked Mr. McNeill for other sources to verify the 2007 allegations.

**Second**, a jury could infer that the gym staff could have tracked down an independent source to verify the 2007 allegations. *See* Memorandum, Doc. No. 93, at 9. The gym now argues that Ms. Court presented no evidence as to whom the gym staff would have asked or what the staff would have learned.

The gym is correct about the lack of any independent source in the record, meaning that the jury could conclude that any investigation by the gym staff into the 2007 arrest would have yielded no information. But, using its common sense, a jury could just as well infer that an investigation would not have led to such a dead end.

**Third**, the gym could have asked Mr. McNeill's previous employer, Hand & Stone Spa, about his employment there. *See* Memorandum, Doc. No. 93, at 10. A reasonable jury could infer that Hand & Stone would have told the gym why Mr. McNeill was fired: he inappropriately touched a Hand & Stone client during a massage. The jury could conclude that such information, of course, would have been reason enough not to hire Mr. McNeill.

Again, the gym points out that Ms. Court never sought evidence or testimony from Hand & Stone concerning what that spa would have said about its former employee. But a lack of testimony from Hand & Stone does not mean that a jury must conclude that Hand & Stone would have, if asked, given Mr. McNeill a stellar review. To the contrary, a reasonable jury could infer that Hand & Stone would have told the gym at least that Mr. McNeill would not be re-hired. This information, too, could have been grounds for the gym to refuse to hire Mr. McNeill.

Indeed, in an affidavit obtained by the gym defendants, Mr. McNeill's boss at Hand & Stone stated that she would have told the gym just that: she would not re-hire Mr. McNeill. Ironically, the gym protests this Court's ruling not to admit the affidavit. But admitting the affidavit only *bolsters* a reasonable jury's possible conclusion that reaching out to Hand & Stone would have deterred the gym from ever hiring Mr. McNeill.

\*     \*     \*

In any event, it is not the Court's job to guess which inference the jury would draw. Above all, the gym staff testified in their depositions that they would not have hired Mr. McNeill

if they had checked his criminal history and learned of the 2007 arrest. *See* Pltf. Statement of Facts, Doc. No. 63-1, at ¶¶ 81–83. Although refusing to hire Mr. McNeill based only on the bare fact of his 2007 arrest record would have run afoul of the CHRIA, this merely leads into the next issue raised by the gym.

### 2. *The Court held that the gym should have used protected CHRIA information as a jumping-off point to find other information about Mr. McNeill.*

Any inference about a decision not to hire Mr. McNeill starts from the proposition that the gym could have used, to one effect or another, the fact that Mr. McNeill was arrested in 2007 for child molestation. *See* Memorandum, Doc. No. 93, at 6–8. The gym now argues that, even if it had learned that Mr. McNeill had been arrested for child molestation, it was obligated by Pennsylvania's Criminal History Records and Information Act (CHRIA) to keep that information out of the equation when deciding whether to hire Mr. McNeill.

As this Court stated in its prior Memorandum:

> [T]he Gym Defendants here concede that they can identify only cases in which the CHRIA is a *sword* — imposing liability on a prospective employer for considering a prospective employee's criminal history. They cannot identify any cases that present the fact pattern here, in which an employer seeks to use the CHRIA as a *shield* — protecting the employer from liability to a third-party victim.

Memorandum, Doc. No. 93, at 7. The gym argues that a reasonable employer of a massage therapist would have completely disregarded the 2007 arrest so as to avoid CHRIA liability. As an initial matter, a jury could simply conclude otherwise: a reasonable employer, if limited to navigating between the Scylla of CHRIA liability (for refusing to hire Mr. McNeill) and the Charybdis of negligent-hiring claims (brought by Mr. McNeill's future victims), would elect to face CHRIA liability.

4

On a more fundamental level, the implications of the gym's argument are bizarre: on the gym's logic, a reasonable employer could refuse to hire a job candidate if the employer simply *heard* that the candidate had a criminal past, but if the candidate had *actually been arrested*, then the reasonable employer would have no choice but to hire the candidate.

Because the gym cannot cite any case to support its contention — that the CHRIA is not only a sword for rejected job applicants, but also a shield for allegedly negligent employers — the Court rejects it once again, reminding the gym that its witnesses stated in their depositions that they would not have hired Mr. McNeill if they had checked his criminal history and learned of the 2007 arrest. Such a decision may have run a risk of CHRIA exposure, but it would have prevented Ms. Court from being assaulted.

The gym asks this Court to apply two different standards to actors' mistaken understandings of the law. On the one hand, as just mentioned, the gym asks the Court to *disregard*, on CHRIA grounds, the statements of gym staff that they would never have hired Mr. McNeill had they known of the 2007 arrest. On the other hand, the gym asks the Court to *credit* the statement of prior employer Dana Kline that she would have refused to tell gym staff why Mr. McNeill was fired from Hand & Stone, based on her avowed mistaken belief that she was legally prohibited from doing so.

The gym cannot have it both ways. Either the gym must credit witnesses' misunderstandings of the law (in which case, a jury could believe the gym staff's statements that they would have refused to hire Mr. McNeill because of his 2007 arrest alone), or it must disregard those misunderstandings (in which case, a jury could believe that Ms. Kline would have told the gym the real reason she fired Mr. McNeill, which would have given the gym ample reason not to hire him).

5

Furthermore, this issue is not a good candidate for an interlocutory appeal under 28 U.S.C. § 1292(b). Even if the CHRIA required the gym to hire Mr. McNeill, any reasonable investigation into his background would have alerted the gym to the need to keep its newest employee away from vulnerable clients. *See* Memorandum, Doc. No. 93, at 12. Thus, even a successful interlocutory appeal by the gym would not expedite the case overall, which would still progress to trial on a failure-to-supervise theory. The gym's motion to certify an interlocutory appeal on the CHRIA issue is therefore denied.

> 3. *The Court reverses its ruling on the Kline affidavit, allows the affidavit into evidence, but concludes that the affidavit does not change the outcome of the motion for summary judgment.*

After the close of discovery, the gym produced an affidavit from Dana Kline, Mr. McNeill's former boss at Hand & Stone. In the affidavit, Ms. Kline states that, had the gym asked, she would have told them that she would not rehire Mr. McNeill.

In December, the Court applied the text of Rule 37(c)(1) to bar the affidavit because the gym, having "fail[ed] to . . . identify [Ms. Kline] as required by Rule 26(a) or (e), [was] not allowed to use [her statement] to supply evidence on a motion, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *see also* Memorandum, Doc. No. 93, at 10 n.2.

The Court did not fully weigh the four late-discovery factors set forth by the Third Circuit Court of Appeals. Those factors are: "(1) the prejudice or surprise of the party against whom the excluded evidence would have been admitted; (2) the ability of the party to cure that prejudice; (3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court; and (4) bad faith or wilfulness in failing to comply with a court order or discovery obligation." *Nicholas v. Penn. State Univ.*, 227 F.3d 133, 148 (3d Cir. 2000).

Applying all of the four factors now, the Court will allow Ms. Kline's affidavit to be part of the summary judgment record. First, Ms. Court is not greatly prejudiced by the affidavit, given that she should have thought to interview someone from Hand & Stone, Mr. McNeill's most recent prior employer and his only other massage employer. Second, because the prejudice is minimal, Ms. Court should be able to cure it. Third, the affidavit of a single witness will not disrupt trial, which is not scheduled to start until next month. And fourth, the gym's failure to produce the affidavit on time was not borne out of any demonstrated bad faith.

Allowing the inclusion of the Kline affidavit does not alter the Court's overall conclusion on summary judgment. To begin, as the Court has already discussed, information from Hand & Stone was only one of at least three possible inferences open to the jury — to say nothing of the gym staff's unequivocal statements that they would not have hired Mr. McNeill had they known of his 2007 arrest.

Furthermore, Ms. Kline's affidavit does not foreclose a reasonable jury's inference that the gym staff could have declined to hire Mr. McNeill after speaking to Ms. Kline. Had the gym staff asked whether Mr. McNeill was a good employee, they would have gotten a flat "no" from his only prior professional employer. That answer alone should have raised a red flag and counseled against hiring Mr. McNeill at the gym.

### *4. The Court properly allowed the punitive damages claim to go forward.*

Pennsylvania law allows claims for punitive damages based on negligence hiring, as long as the defendant exhibits reckless indifference to the rights of others. *See Hutchinson v. Luddy*, 870 A.2d 766, 770, 772 (Pa. 2005). Accordingly, this Court allowed Ms. Court's claim for punitive damages to survive summary judgment. *See* Memorandum, Doc. No. 93, at 10–12.

The gym now argues that the Court applied the wrong rule for punitive damages. To be sure, *Hutchinson* stands for the proposition that punitive damages may be awarded when a

7

defendant exhibits reckless indifference to the rights of others. *See Hutchinson*, 870 A.2d at 770. The Court already applied this standard.

Instead, the gym zeroes in on a more refined statement of the rule from *Hutchinson*: that punitive damages are warranted only when (1) the defendant "had a subjective appreciation of the risk of harm to which the plaintiff was exposed," and (2) the defendant "acted, or failed to act, . . . in conscious disregard of that risk." *Id.* at 772. Put differently, the defendant must "know[], or ha[ve] reason to know, of facts which create a high degree of risk of physical harm to another," and the defendant must "deliberately proceed[] to act, or to fail to act, in conscious disregard of, or indifference to, that risk." *Id.* at 771 (internal quotations, citations, and alterations omitted). This rule is meant to distinguish from situations in which the defendant merely "does not realize or appreciate the high degree of risk involved, although a reasonable man in his position would do so." *Id.* (internal quotations, citations, and alterations omitted).

In this case, even the gym's preferred, refined rule statement is satisfied. The Court will leave aside without further comment that it appears that the gym seeks to argue that punitive damages would be disallowed here precisely because the gym remained ignorant of the information available from Mr. McNeill's prior employer. As discussed above, the gym had reason to know about Mr. McNeill's past. More generally, the gym should have known that massage therapists deal with clients in vulnerable situations:

> The job of a massage therapist is highly sensitive and carries a significant amount of risk to third parties. Massage therapists come into contact with the public on a daily basis. Massage therapists' jobs place them in a position of power over potentially vulnerable clients, who are frequently nude or semi-nude. There is always a risk that a massage therapist will abuse his or her power and act inappropriately towards a vulnerable client. Ms. Court's allegations are an example of what can transpire if an employer places its trust in the wrong massage therapist.

8

Memorandum Denying Mot. to Dismiss, Doc. No. 40, at 9.  That point is a matter of common sense, but as further proof, this Court has already noted that a massage therapist at another gym operated by 12Fit sexually assaulted a client in 2003.  *See* Memorandum, Doc. No. 93, at 11.  A jury could conclude that the gym's failure to conduct any kind of background check on Mr. McNeill exhibited "indifference to" the general risk posed by massage therapists.

Because this analysis is sufficient to support a jury's potential award of punitive damages at the conclusion of a trial and based upon appropriate instructions as to the applicable law, the Court need not consider the gym's other claimed error — namely, that the Court should not have considered the harm to massage clients assaulted *after* Ms. Court.  *See* Memorandum, Doc. No. 93, at 11–12.

> 5. ***The Court properly concluded that Ms. Court's emotional distress upon learning about subsequent victims was sufficiently foreseeable to leave the matter open for the jury to consider.***

A portion of Ms. Court's emotional distress was allegedly triggered when she learned about Mr. McNeill's subsequent victims at the gym.  The gym disputes whether this emotional distress was reasonably foreseeable.  The gym is correct that any compensable emotional distress must have been reasonably foreseeable "at the time" of Ms. Court's assault.  *See Schmidt v. Boardman Co.*, 11 A.3d 924, 949 n.25 (Pa. 2011) (quoting *Dillon v. Legg*, 441 P.2d 912, 919 (Cal. 1968)).

The Court has left it open for the jury to determine that it was reasonably foreseeable that Ms. Court would learn about Mr. McNeill's other victims, thereby triggering her further emotional distress.  *See* Memorandum, Doc. No. 93, at 13–14.  Although the gym is correct that Ms. Court was not actively pursuing her case when she learned of the other victims, that fact is beside the point.  After all, *at the time she was assaulted*, based upon the contemporaneous

interactions of the parties, it was reasonable foreseeable that she was bring a lawsuit and learn of Mr. McNeill's other victims.

## CONCLUSION

For the foregoing reasons, the Court denies the gym's motion for reconsideration and motion for interlocutory appeal. An appropriate order follows.

BY THE COURT:

<u>S/Gene E.K. Pratter</u>
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE