IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ELENA MYERS COURT, | : | |
|                 *Plaintiff*, | : | CIVIL ACTION |
| | : | |
|     v. | : | |
| | : | No. 16-4848 |
| LLB GYM, LLC et al., | : | |
|                 *Defendants*. | : | |

**M E M O R A N D U M**

PRATTER, J.                                                                                                                               JUNE 28, 2018

**INTRODUCTION**

During discovery in this negligent-hiring case, plaintiff Elena Myers Court designated Stephen Barth as her testifying expert on hiring standards in the hospitality industry. Mr. Barth produced a report, which Ms. Court cited in her failed opposition to the hotel defendants' successful motion for summary judgment. Once only the gym remained as a defendant in the case, Ms. Court re-designated Mr. Barth as a non-testifying expert.

Despite Mr. Barth's non-testifying designation, the gym defendants have moved to take a videotaped trial deposition of him. The Court denies the motion because Mr. Barth's re-designation as a non-testifying expert shields him from such a request.

**BACKGROUND**

**I.    Hiring and Assault**

In 2014, the Loews Philadelphia Hotel contracted with the 12Fit Gym to operate a spa in the hotel. 12Fit, in turn, hired Jerome McNeill as a massage therapist without conducting a criminal background check.

It turns out that Mr. McNeill had a checkered past. In 2007, he was arrested and charged with raping a minor. The charges were ultimately withdrawn. In 2013, he was convicted of

1

reckless endangerment for fleeing a police officer on a motorcycle. In 2014, shortly before joining 12Fit, Mr. McNeill was fired from his job as a massage therapist at Hand & Stone Spa for sexually assaulting a patron, leading to criminal charges as to which he was acquitted in late 2016.

Before hiring Mr. McNeill, 12Fit did not verify Mr. McNeill's employment history. Nor did 12Fit contact his prior employer, Hand & Stone, to ask why Mr. McNeill no longer worked there. The extent of 12Fit's research on Mr. McNeill was to note that he had a then-valid Pennsylvania massage license.

On September 14, 2014, Mr. McNeill sexually assaulted Elena Myers Court, a Loews hotel guest, during a massage session. Ms. Court sued both the Loews Hotel and the 12Fit Gym, alleging negligent hiring, supervision, and retention. At the summary judgment stage in late 2017, the Court dismissed the Loews defendants from the case, leaving only the gym defendants.

## II. Ms. Court's Expert and this Discovery Dispute

During discovery, Ms. Court designated Stephen Barth as her expert on the applicable standard of care. Mr. Barth, an alleged expert on legal and safety issues in the hospitality industry, produced a report concluding that the hotel and gym had each breached their duties of care. Ms. Court then cited the Barth report in her opposition to the hotel defendants' motion for summary judgment. She did not cite Mr. Barth in her opposition to the gym defendants' motion for summary judgment.

Since the summary judgment phase of the case, Ms. Court has decided not to call Mr. Barth at trial and has "de-designated" him as a testifying expert. Ms. Court and her counsel have confirmed this intention in unequivocal terms. Now, the gym defendants claim that they wish to use Mr. Barth as a witness. They have asked that he appear for a videotaped trial deposition in

lieu of live testimony at trial. Evidently, Mr. Barth has written a textbook on hospitality law that undercuts the report he prepared in this case and is therefore favorable to the gym defendants.

Ms. Court has refused to make Mr. Barth available on the ground that he is now a non-testifying consulting expert. In response, the gym defendants filed this motion to compel, requesting an order for Mr. Barth to appear "for a videotaped trial deposition to address his expertise in the legal issues in the hotel spa industry." Mot. Compel ¶ 17.

### DISCUSSION

The de-designation of Mr. Barth from testifying to non-testifying expert shields him from a trial deposition by the gym defendants. As a general rule, Federal Rule of Civil Procedure 26(b)(4) divides experts into two categories: testifying and non-testifying.

**Testifying Experts.** First, Rule 26(b)(4)(A) "allows an opponent to discover the name and substance of the testimony of experts who will testify at trial." *Mantolete v. Bolger*, 96 F.R.D. 179, 181 (D. Ariz. 1982). Thus, "either party may introduce the deposition of an opposing party's expert if the expert is identified as someone who may testify at trial because 'those opinions do not belong to one party or another but rather are available for all parties to use at trial.'" *De Lage Landen Operational Servs., LLC v. Third Pillar Sys., Inc.*, 851 F. Supp. 2d 850, 853 (E.D. Pa. 2012) (quoting *Olsen v. Delcore,* No. 2:07–CV–334 TS, 2009 WL 3055411, at *1 (D. Utah Sept. 24, 2009)).

**Non-Testifying Experts.** Second, Rule 26(b)(4)(D) "governs the facts and opinions of experts who are not to be used at trial, but are instead retained only in anticipation of litigation or preparation for trial. These experts are subject to a more restrictive discovery standard." *Mantolete*, 96 F.R.D. at 181. The opposing party may depose them only "on showing

3

exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means." Fed. R. Civ. P. 26(b)(4)(D)(ii).

In this case, Mr. Barth initially fell into the first category but has since been "de-designated" as a testifying expert, arguably falling into the second category. The motion to compel therefore presents "the vexing and surprisingly little explored question of whether one party should be able to depose or call at trial an expert designated by an opposing party as expected to be called at trial, but whom the designating party has announced it will not call at trial." *House v. Combined Ins. Co.*, 168 F.R.D. 236, 238 (N.D. Iowa 1996).

Courts facing this kind of "de-designation" question have hewn their decisions to the specific situations before them. Even so, the predominant conclusion, and the one the Court reaches here, is that the de-designation of Mr. Barth from testifying to non-testifying expert shields him from a trial deposition by the gym defendants.

In the simplest fact pattern, an expert is de-designated before any report was served on the opposing party. *See, e.g.*, *Mantolete*, 96 F.R.D. at 181; *Ross v. Burlington N.R. Co.*, 136 F.R.D. 638, 639 (N.D. Ill. 1991). In such a situation, de-designation shields the expert from any further discovery absent extraordinary circumstances, *see Mantolete*, 96 F.R.D. at 182, because the party employing the expert "has the prerogative of changing his mind" as to the expert's testifying or non-testifying status. *Ross*, 136 F.R.D. at 639.

Even when the expert's report is produced to the opposing party, as Mr. Barth's was here, most courts allow de-designation to shield the expert. *See, e.g.*, *Callaway Golf Co. v. Dunlop Slazenger Grp. Americas, Inc.*, No. 01-CV-669, 2002 WL 1906628, at *3 (D. Del. Aug. 14, 2002) ("Divulging the expert opinions did not alter the analysis."). Thus, "the majority approach in federal jurisprudence is to allow the work product protection/consultative privilege to be

4

restored, even if a testifying expert witness' designation is withdrawn after his/her opinions have been disclosed." *Hansen Beverage Co. v. Innovation Ventures, LLC*, No. 08-CV-1166, 2010 WL 1608880, at *2 (S.D. Cal. Apr. 20, 2010) (quoting *Manship v. United States*, 240 F.R.D. 229, 237 (M.D. La. 2006)).

Mr. Barth's precise situation presents an additional nuance: Ms. Court not only produced his expert report during discovery, but also cited the report to oppose Loews's motion for summary judgment. *See* Doc. No. 64, at 18. The gym defendants argue that Ms. Court should not be allowed to have it both ways — relying on Mr. Barth's testimony in a substantive pre-trial filing when it suits her, but blocking an opponent from doing the same at trial. Channeling this intuition, at least one court has drawn a tentative line between a de-designated expert whose opinion was merely *produced* earlier in the litigation (shielded from discovery) and one whose opinion was *used* in a pretrial motion (not shielded), as Mr. Barth's was here. *See Hansen Beverage Co. v. Innovation Ventures, LLC*, No. 08-CV-1166, 2010 WL 1608880, at *2 (S.D. Cal. Apr. 20, 2010) ("[A]rguably, it might be a different situation where the Court considered the de-designated expert's opinion in a pretrial motion.").

But two facts in this case militate against the conclusion that the gym defendants may depose Mr. Barth just because Ms. Court cited his report in a single pre-trial brief. First, Ms. Court cited the report in her opposition to *Loews's* motion for summary judgment, not the *gym defendant's* motion. Second, Ms. Court lost that motion; Loews was dismissed at the summary judgment stage. Any equitable consideration resting on the Court's supposed reliance on Mr. Barth's report is therefore sapped of its strength. *Cf. PlymoVent Corp. v. Air Tech. Sols., Inc.*, 243 F.R.D. 139 (D.N.J. 2007) (concluding that a non-testifying expert whose report was initially cited during a preliminary-injunction hearing was nevertheless shielded from a deposition by the

opposing party because the preliminary-injunction court "did not give [the report] any weight," *id.* at 144, and ultimately ruled against the proponent of the expert report, *id.* at 144 n.9).

None of the gym defendants' remaining cases arguably favoring discovery is on point.

First, the gym defendants cite *House* for the proposition that designating an expert as a testifying witness is a one-way ratchet for all time: once discoverable, always discoverable. *See House v. Combined Ins. Co. of Am.*, 168 F.R.D. 236, 245 (N.D. Iowa 1996) ("[D]esignation of an expert as expected to be called at trial . . . even if that designation is subsequently withdrawn, takes the opposing party's demand to depose and use the expert at trial out of the 'exceptional circumstances' category of Rule 26(b)(4)(B)."). But *House* rested on a factual predicate that this case lacks: in *House*, the de-designated expert had previously sat for a deposition, which "preserve[d] the testimony of the expert" and "provide[d] a basis for impeachment." *Id.* Here, by contrast, the gym defendants never deposed Mr. Barth. *Cf. Penn Nat. Ins. v. HNI Corp.*, 245 F.R.D. 190, 193 (M.D. Pa. 2007) (allowing opponent to depose testifying experts who had "subjected [their] opinions to the scrutiny of trial" and thereby "waived the protection" of the non-testifying expert rules).

Second, the gym defendants cite *De Lage* for the proposition that "either party may introduce the deposition of an opposing party's expert if the expert is identified as someone who may testify at trial because those opinions do not belong to one party or another but rather are available for all parties to use at trial." *De Lage Landen Operational Servs., LLC v. Third Pillar Sys., Inc.*, 851 F. Supp. 2d 850, 853 (E.D. Pa. 2012) (quotations omitted). But *De Lage* is off the mark: the expert in question in that case was always a testifying expert, and, unlike Mr. Barth's case, that status never changed. *Id.*[1]

---

[1] There is another issue looming in the background of this dispute: Even if Rule 26(b)(4) allows the gym defendants to take a videotaped trial deposition of Mr. Barth, and even if the

## CONCLUSION

For the foregoing reasons, the gym defendants' motion to compel is denied. An appropriate order follows.

BY THE COURT:


S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

---

Court concludes that experts are permitted in this case, any testimony by Mr. Barth is likely cumulative of testimony by the gym defendants' own hospitality expert. The gym defendants seek testimony from Mr. Barth about "hiring and interviewing employees in the hospitality business." Reply at 2. Yet they already have retained their own testifying expert for this very purpose. The Court recognizes that a ruling on the cumulative nature of Mr. Barth's testimony would be premature, but nevertheless expresses skepticism about the necessity of such testimony.